IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2009 Session

**ALANNA CHRISTY DANIELS HOWE, v. JOHN ASHLEY HOWE**

**Appeal from the Chancery Court for Hamilton County**
**No. 07-0768     Hon. W. Franks Brown, III., Chancellor**

**No. E2008-02580-COA-R3-CV - FILED JANUARY 28, 2010**

In this divorce action, after a long and contentious trial, the Trial Court awarded the mother the divorce and awarded custody of the parties' minor child to the father. The sole issue on appeal by the mother is the award of custody to the father. We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

Selma Cash Paty, Chattanooga, Tennessee, and Pamela O'Dwyer, Chattanooga, Tennessee, for the appellant, Alanna Christy Daniels Howe.

Fred T. Hanzelik, Chattanooga, Tennessee, for the appellee, John Ashley Howe.

**OPINION**

Plaintiff, mother brought this action for divorce against defendant, father, alleging the parties have one child who was born on September 21, 2005. The Complaint alleged an affair by the father with an unstable woman, and that he had been mentally cruel to the mother. The Complaint sought custody of the minor child, and a Motion for Temporary Alimony and Child Support was filed.

The father filed a Motion to Set Visitation, alleging the mother had refused to allow visitation, and a few months later, the father filed a Motion to Compel, stating he had been denied visitation rights given to him by the Court, and also requested overnight visitation. Following a hearing on the motion, the father was granted certain visitation times with the child, gradually increasing to alternating weekends.

In August 2008, the mother filed a Motion for Permission to Move Child, asking the Court for permission to move with the child to Tampa, Florida or Knoxville, Tennessee, stating that her father's health was worse, and that he had been diagnosed with aggressive cancer. She also filed a Motion to Amend Complaint to Show Cause and for Contempt, asserting the father had recently assaulted her. The father objected to the Motion, because it was filed one day prior to the trial.

The father filed an Answer on the first day of the parties' trial, and the father's counsel admitted that when reviewing the pleadings, he realized that he inadvertently failed to respond to the Complaint. The mother's counsel moved for default judgment, and the Court overruled the motion, observing that the case was "hotly contested on numerous issues since early on", and that a motion for default could have been filed earlier if that was an issue. The parties stipulated the mother had grounds for a divorce from the father.

The evidentiary hearing lasted several days with numerous witnesses, and the Trial Judge allowed the parties to repeatedly testify.

Subsequently, the Court entered a Memorandum Opinion and Order, stating the case had many issues. The Court then denied the mother's motion seeking to amend the pleadings, finding that this was an attempt to circumvent the 60 day notice to relocate required by the parental relocation statute. The Court granted a divorce to the mother, based on the father's stipulation that she had grounds for divorce.

In denying the mother's request to relocate, the Court said the fact that she had not complied with the requirements of the statute, and because she had no employment in Tampa, Florida, also the mother might be trying to move the child away from the father, was ample grounds to deny her motion.

The Court then discussed the considerations involved with naming the primary residential parent for the minor child, and made specific findings regarding each of the factors listed in Tenn. Code Ann. §36-6-366. The Court found the mother had been the primary care giver for the child since birth, but that both parties clearly loved the child and wanted to be with her. The Court stated that it had serious questions about the mother's credibility and stability, especially based on her screaming episodes in the child's presence.

The Court stated a concern about Ms. Howe's mother, and that her actions towards the father in the presence of the child were "despicable". The Court stated that people attending the trial in support of the mother acted inappropriately, and cited examples.

The Court stated the father won "hands down" on the tenth factor, which had to do with a parent encouraging and facilitating the other parent's relationship with the child, and noted that the mother had tried to get the father arrested on more than one occasion. The Court found the mother had deprived the father of visitation time with the child for no good reason, and that the mother and her mother had said inappropriate things to the father in the child's presence.

The Court stated that it had examined all the factors in the statute, and that most of them did not favor one parent over the other, but the mother had arguably caused emotional abuse to father and the child, and that the mother lost heavily on the factor in subsection (a)(10).

The Court designated the father as primary residential custodian of the child, and expressed confidence that the father would keep the terms of a parenting plan and would foster the child's love for both parents, whereas the mother would not. The Court concluded that the mother would have 65 days per year with the child, as she proposed for the father.

The Court then discussed the mother's lack of credibility, stating that the mother refused/failed to respond to certain questions, that she produced outdated financial documents, and that she was evasive about some issues. The Court said the mother's anger over the father's infidelity had caused her to "fudge" the truth and use the child as an instrument of punishment.

The mother then filed a Motion for Stay and to Alter/Amend Parenting Time, stating that until the day the trial started, the father had not filed an answer and the mother had no idea that the primary parenting assignment was an issue. She alleged that she was not prepared at trial to defend the parenting issue, and that it was not in the child's best interest to be separated from her. The father also filed a Motion to Amend, and the Court then entered an Order, finding the father filed an Answer on the first day of trial, after the mother's counsel made an oral motion for default judgment. The Court stated that, based on the amount of work put into the case by both parties, it was clearly contested, and thus default was inappropriate.

The Court found the mother also claimed that she had no notice that her status as primary residential parent was at issue, but noted that the father had asked for the child to remain in Tennessee with him if the mother relocated in his response to her petition, and

denied that the mother should have custody in his Answer. The Court further observed that as the trial progressed, it was obvious that the father should be the PRP, and that much of the evidence which aided in this decision was from recent events. The mother then filed a Notice of Appeal.

The Court had allowed yet another evidentiary hearing on the post-trial motions, which evidence is in the record.

The issue raised on appeal by the mother is: Whether the Court erred in awarding primary residence to the father/appellee?

The mother first argues that she had a lack of notice that the father was pursuing custody. This argument is disingenuous, however, since the parenting issues were hotly contested from the very beginning, as evidenced by the voluminous pleadings filed prior to trial. While it is true the father did not file his answer denying that the mother was the proper custodian of the child until the morning of trial, the Trial Court found that default judgment was improper, stating "it's been obvious to everyone that this case has been hotly contested on numerous issues since early on, and the motion could have been made earlier".

Moreover, the issue of custody was a constant theme throughout the entire trial, and most of the mother's testimony seemed directed toward painting the father as a "bad person", and the Court and counsel repeatedly referenced the custody issue during the course of the trial.

The mother cites the *Keisling* case in support of her argument regarding notice, but that case is not similar, because in *Keisling* the Supreme Court found that there was no notice that custody could be changed, as change in custody was not expressly or impliedly tried. *Keisling v. Keisling*, 92 S.W.3d 374 (Tenn. 2002). In this case custody was expressly tried, and the father clearly testified that he at least wanted a joint or shared custody arrangement. This was expressed at trial and at a prior motion hearing. At some point early in the trial, the Trial Court made a statement on a relevance objection that all the evidence relating to issues regarding the child, including custody, was relevant.

Finally, the mother argues that if she had known custody was an issue, she would have presented witnesses that she presented at the post-trial hearing, presumably to testify that she was a good mother. The father admitted at trial that the mother was a good mother. He simply gave examples of incidents where she "lost it" in front of the child or where her behavior seemed inappropriate and detrimental to the child. This trial spanned several days, and assuming *arguendo* that she did not realize that custody was an issue until the answer was filed or even until the trial began, she had ample time to call more witnesses on her own

behalf. Her arguments is not persuasive and we find it has no merit.

Next, the mother argues that custody was improperly granted to the father based upon the evidence, and that the Trial Court did not adequately consider all of the statutory factors. The parties agree that custody determinations are reviewed under an abuse of discretion standard (*see, e.g.*, *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996)), and that the trial court's decision should thus be upheld so long as "reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001). Further, a trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243 (Tenn. 1999).

The factors to be considered in making a custody decision are enumerated in Tenn. Code Ann. §36-6-106. In this case, it is clear that both parents greatly love the child and that both have strong emotional ties with her. The mother was the primary care giver until the time of the custody change. As the marital home was to be sold at the time of the divorce, the child would not have remained in the same home whichever parent she resided with after the divorce, and the father would keep her in the same community, as he had no plans to relocate.

The Court found the mother was guilty of some form of emotional abuse, as listed in factor 8 of the statute. Factor 10 was the biggest determining factor for the Court, and it appears that the Court's finding in this regard was appropriate, i.e. while both parents were willing to care for the child, it would appear that the father is more willing to facilitate a close and continuing relationship with the child and the mother than the mother was willing to do for the father. While factor 10 is not the most important or only factor to consider, it is important in deciding which parent is more fit to take on the primary role. *Morman v. Morman*, 2006 WL 2068757 (Tenn. Ct. App. July 25, 2006).

In some respects, this case is similar to the *Morman* case. Here the Trial Court had to sift through a great deal of disparaging information about both parents, and ultimately determined that factor 10 was most significant. The Court determined that the mother's credibility was questionable, and that she would likely thwart the child's relationship with the father in spite of the Court's orders, while the father was more likely to follow the Court's orders, and that the child's best interest would be served by naming the father primary residential parent.

With deference to the Trial Judge on the issue of credibility, the evidence does not preponderate against the Trial Court's findings, and the mother has not demonstrated that the Trial Court abused its discretion in awarding primary custody to the father. Tenn. R. App.

P. 13(d).

Finally, while the mother did not identify as an issue at the beginning of her brief that she was entitled to attorney's fees on appeal, there is no basis for this award, however, since the mother did not prevail on the appeal. This issue is without merit.

The Trial Court's Judgment is affirmed and the cost of the appeal is assessed to Alanna Christy Daniels Howe, and the cause remanded.


_____
HERSCHEL PICKENS FRANKS, P.J.