IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 2, 2002 Session

## SHARON M. KEISLING v. DANIEL KERRY KEISLING

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Wilson County**
**No. 1644    Clara W. Byrd, Judge**

---

**No. M2002-01833-SC-R10-CV - Filed December 23, 2002**

---

This case is before the Court on an interlocutory appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.[1]  We granted permission to appeal to determine whether the trial court erred in transferring child custody from one parent to the other when no petition requesting a change of custody had been filed at the time of the ruling.  After carefully reviewing the record, we conclude that the trial court erred in changing custody when the aggrieved party was not provided with notice that custody would be addressed at the hearing.  Therefore, we reverse the trial court's award of custody and remand this case to the trial court for proceedings consistent with this opinion.

**Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Trial Court Reversed; Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ, joined.

Dan R. Alexander and John E. Herbison, Nashville, Tennessee, for the appellant, Sharon M. Keisling.

John P. Brown, III, Nashville, Tennessee, for the appellee, Daniel Kerry Keisling.

**OPINION**

I.  Factual and Procedural Background

The applicant, Sharon M. Keisling, and the respondent, Daniel Kerry Keisling, were divorced in the Circuit Court of Wilson County, Tennessee, in 1998.  Ms. Keisling was granted custody of the

---

[1]This Court may grant an interlocutory appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure when a lower court "so far depart[s] from the accepted and usual course of judicial proceedings as to require immediate review."

parties' three minor children: Daniel Ryan Keisling, Rachael Annette Keisling, and Heather Rebecca Keisling. Mr. Keisling was granted liberal co-parenting time. Prior to the divorce, the children lived in the same household with both their parents and their maternal grandparents. After the divorce, Ms. Keisling continued to reside with the children at her parents' home.

A multitude of pleadings have been filed with the trial court since the entry of the parties' divorce. These post-divorce proceedings have been particularly acrimonious. In March of 2000, the litigation between the parties intensified when Ms. Keisling filed a petition seeking, among other things, to modify Mr. Keisling's visitation due to allegations that he had sexually abused their children. In connection with this action, Mr. Keisling's visitation was initially suspended, then restricted. The court ordered counseling for the children. Mr. Keisling's regular, unsupervised visitation with his children was ultimately restored in March of 2001 when the trial court concluded that Mr. Keisling "did not sexually molest any of the parties' minor children." In December of 2001, Mr. Keisling filed a petition asking the trial court to grant him custody of the children. Mr. Keisling voluntarily dismissed this petition in May of 2002.

On July 11, 2002, another post-divorce petition was filed by Ms. Keisling. In this petition, Ms. Keisling asked the trial court to modify Mr. Keisling's visitation with their children due to new allegations of sexual abuse and to modify child support. Approximately two weeks following the filing of Ms. Keisling's petition, the trial court held what it characterized as an "emergency hearing" regarding the new allegations of child sexual abuse. Mr. Keisling filed no answer, responsive pleading, or counter-petition prior to the time that the trial commenced on July 22, 2002.

The trial transcript reflects that on July 22, 2002, while discussing preliminary matters, counsel for Mr. Keisling said:

> We don't think the kids are in a healthy environment in the maternal grandparents' house, and we think that the hatred between the grandparents and the father is damaging the kids. We're going to renew our petition to have the kids removed from that house or to change custody to Mr. Keisling.

Counsel for Mr. Keisling subsequently emphasized that because an earlier petition seeking to award Mr. Keisling custody was dismissed without prejudice, he intended "to refile the same now." When asked by the court what he thought needed to happen, Mr. Keisling responded, "I think [the children] need to be removed from their mother's residence, put in my care." Toward the end of the three-day hearing, Mr. Keisling's counsel stated that he was asking the trial court to "not only find that there is no abuse but to go a step further and have the courage to take these kids out of the environment that they're in."

On July 26, 2002, at the conclusion of the proof on Ms. Keisling's petition, the trial court denied her request for relief. The trial court found, as it had during a previous proceeding, that Mr. Keisling did not sexually abuse any of the children. The court orally directed that custody of the

parties' three children be temporarily changed from Ms. Keisling to Mr. Keisling. Mr. Keisling was ordered to arrange immediate counseling for the children. The court also prohibited Ms. Keisling from exercising overnight visitation with her children until she obtained housing of her own. In addition, Ms. Keisling's parents were not permitted to be present during visitation.

Ms. Keisling's counsel pointed out that there were no pleadings before the court requesting a change in custody. In response, the trial court stated that it based its ruling upon Mr. Keisling's "oral petition" requesting custody. The trial court then directed counsel for Mr. Keisling to "get our record clear and get your written petition in because you orally moved the Court and I assumed you had a written petition making its way to this file." In support of its ruling, the trial court stressed the "emergency" nature of the case, Ms. Keisling's failure to obtain therapeutic counseling for the children as previously ordered by the court, and the temporary basis of the current order changing custody. The parties' three children were immediately placed in the custody of Mr. Keisling, where they remain.

On August 5, 2002, Ms. Keisling filed an application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. The Court of Appeals denied the motion on August 8, 2002. Also on August 8, 2002, thirteen days after the trial court's oral ruling was issued, Mr. Keisling filed his Answer and Counter-Petition in response to Ms. Keisling's July 11, 2002 petition, requesting, among other things, a change in custody. On August 12, 2002, the court entered a written order temporarily changing custody to Mr. Keisling. No date was set for a subsequent hearing. The order concludes that the need for therapeutic counseling and the alienation of the affections of the minor children toward their father required "no less drastic alternative than to award custody of all three children on a temporary basis" to Mr. Keisling. Neither the oral ruling nor the written order include any specific findings of fact regarding a material change in circumstance or the children's best interests that would support a transfer of custody to Mr. Keisling.

Ms. Keisling sought review by this Court. On September 6, 2002, we granted permission to appeal to determine whether the trial court erred in transferring child custody from one parent to the other when no petition requesting a change of custody had been filed at the time of the ruling.

## II. Analysis

### A. Due Process Requirements

Basic due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." State v. Pearson, 858 S.W.2d 879, 884 (Tenn. 1993) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). One of the purposes of pleadings is to give notice of the issues to be tried so that the opposing party can adequately prepare for trial. See McClellan v. Bd. of Regents of the State Univ., 921 S.W.2d 684, 688 (Tenn. 1996).

Due process is a flexible concept that "calls for such procedural protections as the particular situation demands." Wilson v. Wilson, 984 S.W.2d 898, 902 (Tenn. 1998); Phillips v. State Bd. of Regents of State Univ. & Comty. Coll. Sys., 863 S.W.2d 45, 50 (Tenn. 1993). Three factors must be considered in determining the procedural protections demanded by a particular situation: "(1) the private interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." State v. Culbreath, 30 S.W.3d 309, 317-18 (Tenn. 2000) (citing Wilson, 984 S.W.2d at 902).

## 1. Private Interest

The first factor to consider in determining the procedural protections required is the "private interest at stake." Culbreath, 30 S.W.3d at 317. Here, the private interest is the custody of one's children. Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions. See Stanley v. Illinois, 405 U.S. 645, 651-52 (1972); Tenn. Baptist Children's Homes, Inc. v. Swanson (In re Swanson), 2 S.W.3d 180, 187 (Tenn. 1999); Nale v. Robertson, 871 S.W.2d 674, 678 (Tenn. 1994); Hawk v. Hawk, 855 S.W.2d 573, 578-79 (Tenn. 1993). This Court has recognized for over a century that a "parent is entitled to the custody, companionship, and care of the child, and should not be deprived thereof except by due process of law." State ex rel. Bethell v. Kilvington, 45 S.W. 433, 435 (Tenn. 1898). Accord Nash-Putnam v. McCloud, 921 S.W.2d 170, 174 (Tenn. 1996); Bond v. McKenzie (In re Adoption of Female Child), 896 S.W.2d 546, 547 (Tenn. 1995).

## 2. Risk of Erroneous Deprivation

The second factor to consider in determining the procedural protections a particular situation requires is "the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards." Culbreath, 30 S.W.3d at 317-18. In this case, the trial court awarded custody by deciding an issue not raised in the pleadings. At one time, a judgment that failed to conform to the pleadings on file when the judgment was rendered was necessarily void. See Fidelity-Phenix Fire Ins. Co. v. Jackson, 181 S.W.2d 625, 629 (Tenn. 1944). However, the formal requirements of pleading have been relaxed as a result of the adoption of the Rules of Civil Procedure. A judgment deciding an issue not raised in the pleadings is no longer per se invalid. For example, Rule 15.02 of the Tennessee Rules of Civil Procedure provides that issues tried by express or implied consent shall be treated in all respects as if they had been raised in the pleadings. See Varley v. Varley, 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996).

At the time of the challenged ruling, the only formal pleading before the trial court was Ms. Keisling's petition to modify visitation and child support payments. Ms. Keisling was not served with any pleading notifying her that she could lose custody of her children as a result of the proceeding. We hold that the risk of erroneous deprivation of custody of one's children is substantial

-4-

when no pleadings are filed informing the parent that a change in custody is being contemplated by the court.

After a thorough review of the record, we conclude that the issue of a change in custody from Ms. Keisling to Mr. Keisling was not expressly or impliedly tried. Ms. Keisling's petition alleged sexual abuse of the children by Mr. Keisling. The hearing focused upon the truth of those allegations. Mr. Keisling's counsel did make statements concerning his client's request for custody during the discussion of preliminary matters. These statements, at best, evidence an intention to file a petition, which was not done. Had such a petition been filed, Ms. Keisling would have been on notice of Mr. Keisling's intent to try the issue of custody and the allegations concerning Ms. Keisling's fitness as a parent. At that time, she would have had the opportunity to agree to the trial of the custody issue, or to object and request a continuance. Without such notice, Ms. Keisling could assume that only the issues raised in her pleadings were being tried.

### 3. Government's Interest

The third factor to consider in determining the procedural protections required by a particular situation is "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Culbreath, 30 S.W.3d at 318. The state has an interest in protecting children that must be balanced against a parent's interest in the care and custody of his or her child. See, e.g., Hawk, 855 S.W.2d at 580 (stating that "Tennessee law . . . upholds the state's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child."). Because a parent's right to the care and custody of his or her child is a fundamental constitutional right, this right "may not be abridged absent a compelling state interest." Planned Parenthood of Middle Tenn. v. Sundquist, 38 S.W.3d 1, 10 (Tenn. 2000).

This case involves a temporary change in custody from one parent to the other. Effective July 15, 2002, Tennessee Code Annotated section 36-6-101(a)(2)(B) defines the proper standard for modifying custody from one parent to the other parent. A trial court may not modify an award of custody unless the parent seeking to modify custody proves by a preponderance of the evidence a material change in circumstance. Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2002). Thus, when no material change in circumstance affects a child's welfare, the state lacks a sufficiently compelling justification for modifying custody.

There is no compelling state interest here that overrides Ms. Keisling's constitutional interest in the care and custody of her children. The trial court's oral ruling and written order fail to include any specific findings of fact regarding a material change in circumstance or the children's best interests that would support a transfer of custody to Mr. Keisling.[2] Furthermore, having reviewed the record, we do not find an emergency that justifies either the transfer of custody by the trial court

---

[2]Tennessee Code Annotated section 36-6-101(a)(2)(B) (Supp. 2002) provides that "[i]n each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination."

or the suspension of the basic elements of due process – notice and an opportunity to be heard. The genesis of the emergency hearing in this case was Ms. Keisling's allegation that Mr. Keisling had sexually abused his daughters and her desire to modify visitation. Proper notice was provided as to these issues only. The trial court, however, found these allegations to be unfounded. During the course of the proceedings, the trial court expressed concern that Ms. Keisling had failed to obtain needed counseling for the children. However, the additional time necessary to properly plead and hear any additional proof as to a change in custody would not have unduly prolonged the lack of compliance with the trial court's order.

In summary, we hold that: (1) the private interest at stake – the continuing custody of one's children – is a fundamental constitutional interest; (2) the risk of erroneous deprivation of custody of one's children is substantial where no pleadings exist informing the parent that a change in custody is being contemplated by the court; and (3) the government's interest as parens patriae is not strongly implicated. The magnitude of a parent's constitutional right to rear and have custody of his or her children necessitates that notice satisfying the constitutional requirements of due process be given where a change in custody is at issue. Ms. Keisling's right to due process was violated because there were no pleadings giving notice that custody would be addressed at the hearing. The temporary nature of the trial court's order does not alter our analysis. Accordingly, the trial court erred in granting custody to Mr. Keisling.

## B. Removal of the Trial Judge

Ms. Keisling argues that the trial judge should be removed from the case. We do not agree. "[O]ne of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges." Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001). However, "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." Alley v. State, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Throughout these protracted proceedings, the trial court has conducted the proceedings in an evenhanded manner and has provided the parties with an impartial forum in which to be heard. It is imperative, however, that a party from whom custody will be removed, even temporarily, be provided with notice sufficient to meet due process requirements. Although we find notice to have been lacking in this case, none of the trial court's actions place the court's impartiality at issue. See id. at 821 (stating that "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification."). Therefore, we decline to direct that proceedings on remand be conducted before a different trial judge.

## III. Conclusion

After carefully reviewing the record, we conclude that the trial court erred in changing custody when the aggrieved party was not provided with notice that custody would be addressed at the hearing. For the foregoing reasons, we reverse the order of custody. This case is remanded to the trial court to effect an expeditious return of the children to the physical custody of Ms. Keisling in a manner least disruptive to their welfare.

Costs of this appeal are taxed to the respondent, Daniel Kerry Keisling, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE