IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2009 Session

**CITY OF FRANKLIN, TENNESSEE v. PEGGY HUNTER ET AL.**

**Appeal from the Chancery Court for Williamson County**
**No. 32311    R.E. Lee Davies, Judge**

_____

**No. M2007-02399-COA-R3-CV - Filed May 6, 2009**

_____

Property owners appeal an order authorizing the City of Franklin to demolish a house on their property.  Because we have determined that the procedure used by the city did not comply with due process, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Peggy Hunter, Nashville, Tennessee, Pro Se.

Douglas Hunter, Nashville, Tennessee, Pro Se.

Shauna R. Billingsley, Franklin, Tennessee, for the appellee, City of Franklin, Tennessee.

**OPINION**

Peggy Hunter and Douglas Hunter own property located on Liberty Pike in Franklin, Tennessee.  On January 9, 2006, based upon an affidavit from a building official of the City of Franklin, the chancery court issued an inspection warrant authorizing city officials to inspect the Hunters' property to determine compliance with portions of the Franklin Municipal Code "to the extent that such violations may constitute a public nuisance."  The warrant cited the municipal building code, plumbing code, electrical code, fuel gas code, property maintenance code, existing building code, energy conservation code, mechanical code, residential code, handicap accessibility code, and fire or life safety codes.  The city building officials were ordered to make an immediate inspection of the property and return the administrative inspection warrant within ten days.  The warrant advised the Hunters that, in accordance with Tenn. Code Ann. § 68-120-117(g), willful refusal to permit the inspection or obstruction of the inspection constituted a Class C misdemeanor.

On February 28, 2006, the city filed a "Motion For Order To Show Cause Why Defendants Should Not Be Held In Contempt" with a return by a building official stating that the Hunters had refused to allow the inspection. The motion was heard on March 20, 2006, and the court entered an order dated March 28, 2006, stating the terms of an agreement reached by the parties. Pursuant to the order, the Hunters were to allow the city to inspect on March 21, 2006, and the city was to provide them with a report of the inspection on March 24, 2006, or as soon thereafter as reasonably possible. No later than one week after the city submitted its report to the Hunters, they were to apply for a building/renovation permit. The Hunters were to complete the work and call for a final inspection by August 31, 2006.

The city filed a second contempt motion on May 12, 2006, alleging that, although the Hunters had permitted the inspection and the city had submitted its report detailing the defects in the property, the Hunters had never applied for a building/renovation permit as ordered. The court found the Hunters to be in contempt of the March 26, 2006 order and awarded the city its attorney fees for having to file its contempt motion.

On October 4, 2006, the city filed a third contempt motion alleging that the Hunters had been granted a reasonable opportunity to comply with the March 28, 2006 order but had failed to request a final building inspection. The city requested a finding that the Hunters were in contempt and appropriate punishment for the contempt. On December 8, 2006, the court entered an order requiring the house to be completed by May 1, 2007. An attorney fee award was to be dismissed if the work was completed as ordered.

On July 31, 2007, the city filed a fourth contempt motion alleging that the Hunters had failed to receive a final building inspection and that the codes administration had revoked their building permit. The city sought a finding of contempt for failure to comply with the court's order of December 8, 2006, as well as punishment for the contempt.

The fourth contempt motion was heard on September 20, 2007. The Hunters were not present when the hearing began, and the city proceeded to argue its case before the court. The city asked the court to order another inspection of the property and to require the Hunters to apply for a demolition permit and complete the demolition within a reasonable period of time. Gary Luffman, city building code official, testified about the condition of the property and opined that it had been uninhabitable for 17 years. Mr. Luffman further opined that the house posed a nuisance due to environmental and health problems and as a fire hazard. Photographs showing the condition of the house were presented to the court. Based upon this proof and the Hunters' failure to appear, the court found them to be in contempt of court. The court ordered that the city had the right to inspect the property the following Wednesday. Then, "if the City concluded that the house needs to be demolished, . . . the City may proceed immediately to demolish the house and send him [Mr. Hunter] the bill." The court also awarded the city its attorney fees.

Immediately after the court announced this decision, Mr. Hunter appeared in the courtroom and stated that he had been sitting in another courtroom. Mr. Hunter was sworn in and gave

testimony as to why he had not completed work on the house as ordered, including the fact that he had been injured at work on March 19, 2006. Mr. Hunter presented statements from his doctor and testified that he had sustained a traumatic brain injury. The court declined to change its decision, stating that Mr. Hunter had been given more than enough time to do the work. The court's order, entered on September 20, 2007, provided that if the city determined, after inspection, that the house was non-compliant with the relevant code sections, the city "may take all steps necessary to demolish the structure" and that the Hunters would bear the costs of the demolition. The court further awarded the city a judgment for attorney fees, court reporter fees, and court costs.

On appeal, the Hunters, who are representing themselves, argue that the court erred in authorizing the City of Franklin to demolish their property at the contempt hearing. The city makes several arguments in support of the legality of the challenged order, including assertions that the city made a trial amendment to its pleadings to request demolition of the property and that the court's order was a proper exercise of its contempt powers.

ANALYSIS

We review the trial court's findings of fact with a presumption of correctness pursuant to Tenn. R. App. P. 13(d), but we review legal conclusions under a pure de novo standard with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The police powers of a municipal corporation generally include the power to regulate public nuisances. *See Winters v. Sawyer*, 463 S.W.2d 705, 706 (Tenn. 1971); *see also* 6A Eugene McQuillin et al., THE LAW OF MUNICIPAL CORPORATIONS § 24.63 (3rd ed. 1997). Such regulation must, of course, comply with principles of due process. *See Manning v. City of Lebanon*, 124 S.W.3d 562, 566 (Tenn. Ct. App. 2003). Procedural due process requires that a property owner receive "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* In determining the procedural protections necessary to satisfy due process in a particular situation, courts consider the private interest at stake, the risk of an erroneous deprivation of the interest under the procedures used and the probable value of additional safeguards, and the governmental interests involved. *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002). Except in an emergency situation, such as a fire, due process generally requires a municipality to provide the property owner with notice and an opportunity to be heard prior to destroying his property. *See* 6A McQuillin et al., *supra*, at § 24.26; 7A McQuillin et al., *supra*, at § 24.561(3rd ed. 1998); J. E. Macy, Annotation, *Constitutional Rights of Owner as against Destruction of Building by Public Authorities*, 14 A.L.R.2d 73, §§ 2, 5 (1950).

A primary purpose of pleadings is to give the opposing party notice of the issues to be tried so that he or she can adequately prepare for trial. *Keisling*, 92 S.W.3d at 377; *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 688 (Tenn. 1996). In the present case, the original inspection warrant obtained by the City of Franklin gave it the authority to inspect the Hunters' property to determine if it constituted a nuisance. The city then filed a motion for contempt based upon the Hunters'

alleged failure to comply with the inspection warrant. At that hearing, the parties entered into an agreement under which the city would inspect the property and give the Hunters a report and the Hunters were to take action to remedy any defects found by the city. The hearing at which the court gave the city the authority to demolish the Hunters' property was a hearing on a fourth contempt motion. In light of the posture of the case and the manner in which this action arose, the Hunters had no notice that the hearing on September 20, 2007, would involve a request by the city for permission to demolish their property. Rather, the issue before the court was whether the Hunters were in contempt for failing to comply with the court's previous order. The city did not file any pleadings to have the property declared a nuisance or to request authority to have the property demolished.

The city argues that it essentially amended its pleadings at the hearing when it asked the court for permission to demolish the property and the Hunters failed to object. Tenn. R. Civ. P. 15.02 authorizes amendment of the pleadings to conform with the proof if additional issues are "tried by express or implied consent of the parties." This theory does not work here, however, because the Hunters were not present at the point when the city raised the issue of demolition and there is nothing in the record to suggest that they impliedly consented to the determination of that issue.

The city further asserts that the court's order authorizing demolition of the property was proper as a penalty for contempt. We find this argument to be without merit. A court's contempt powers can be used to compel obedience to its orders and to punish those who willfully disobey those orders. *See* Tenn. Code Ann. §§ 16-1-102 and 29-9-102. We know of no authority, and the city cites none, under which a court is empowered to order the demolition of a house as a punishment for contempt of an order requiring inspection and repair of the house. Even if a court might have such authority under some circumstances, the due process concerns discussed above would prohibit the imposition of such a remedy when the litigant had no notice that such a penalty was being requested.

We have concluded, therefore, that the trial court erred in authorizing the City of Franklin to demolish the Hunters' house without due process. We express no opinion about whether under appropriate notice, pleadings, and judicial findings, this house may be demolished. We reverse the decision of the trial court. Costs of appeal are assessed against the City of Franklin.

_____
ANDY D. BENNETT, JUDGE