FILED
07/18/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 3, 2018

**IN RE KY'AURI M.**

**Appeal from the Juvenile Court for Hamilton County**
**No. 267513   Robert D. Philyaw, Judge**

_____

**No. E2017-00501-COA-R3-JV**

_____

Relying on due process grounds, the mother of the parties' child contends the juvenile court erred by modifying the parenting plan and designating the father as the primary residential parent. The only petition before the court was the father's petition for contempt. The juvenile court magistrate who presided over the initial hearing informed the mother "that the issue before the Court was whether the mother was in contempt of this Court and upon the Court's own motion, if she should remain custodian of the child." At the conclusion of the hearing, the magistrate found "that because of the mother's lack of compliance and cooperation, she was in Contempt of Court and that custody of the child would be granted to the father. . . ." The mother filed a request for rehearing in the juvenile court, and the juvenile court judge affirmed the magistrate's order. This appeal followed. Because neither party petitioned the court to modify the existing permanent parenting plan or the designation of the primary residential parent and due process requires, at a minimum, "notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) (quoting *State v. Pearson*, 858 S.W.2d 879, 884 (Tenn. 1993)), it was error for the juvenile court to modify the permanent parenting plan and change the primary residential parent. As a result, we vacate the juvenile court's order modifying the permanent parenting plan and designating the father as the primary residential parent and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO JR. and BRANDON O. GIBSON, JJ., joined.

Emma Andrews, Chattanooga, Tennessee, for the appellant, Tiffany M. W.[1]

Tabitha E. Finch, Chattanooga, Tennessee, for the appellee, Robert L. M.

## OPINION

Tiffany M. W. ("Mother") and Robert L. M. ("Father") are the parents of Ky'Auri, who was born in May 2010. The unmarried parents never lived together, and shortly after the child's birth, the couple ended their relationship.

In 2013, Father initiated proceedings in Hamilton County Juvenile Court to establish a permanent parenting plan and specifically to set a parenting schedule for his parenting time.[2] A hearing was held May 7, 2013, during which both parents testified. In its order entered on May 17, 2013, the juvenile court entered a permanent parenting plan in which Mother was designated the primary residential parent, each parent was "given the authority to consent to any educational, medical, surgical, or hospital procedure necessary in the best interest of said child," and Father was awarded parenting time every other weekend as well as any other time agreed on by the parties. The order also provided for a holiday schedule and stated that each parent was entitled to two non-consecutive weeks of summer vacation.

In December 2014, Father filed a petition for "sole custody" of the child. A hearing was held January 13, 2015, during which the court ordered the parties to attend mediation, and the matter was set for a review hearing. At the review hearing on April 10, 2015, the parties announced they had agreed to split the summer and winter breaks. The court found that no further review was necessary, and the order entered on May 18, 2015, reflected this change to the permanent parenting plan.

During the summer of 2015, Mother allegedly refused to split the summer break with Father as required by the permanent parenting plan. On August 26, 2015, Father filed a petition for contempt against Mother for her failure to comply with their parenting plan. Father's petition alleged that Mother violated the May 2013 order when Mother refused to include Father in making any decisions concerning their child's education, including advising Father of the name and location of their daughter's school, not listing Father's name on the school pickup list, and not registering their child under her legal name. Father also alleged that Mother violated the May 2015 order by restricting Father's summer parenting time to two weeks.

---

[1] This court has a policy of protecting the identity of children in juvenile cases by initializing the last names of the parties.

[2] Father lives in Nashville and Mother lives in Chattanooga.

This matter was heard September 16, 2015, before a juvenile court magistrate. Although there is no verbatim transcript of the hearing and the Statement of the Evidence Mother filed is modest, the parties' briefs indicate that the magistrate heard testimony from Father regarding his employment, home life and child care in his area. The court also heard testimony from Mother that she was not willing to let the child stay with Father more than two weeks because that was all the child could miss from daycare. During the hearing, the magistrate noted that, according to the April 10, 2015 order, "the parents were to split the summer parenting time equally," and went on to state "the issue before the Court was whether the mother was in contempt of this Court **and upon the Court's own motion, if she should remain custodian of the child.**" (Emphasis added). At the conclusion of the hearing, the magistrate held Mother in contempt of court for her lack of compliance and cooperation with Father. The magistrate further held that Father would better foster the parent-child relationship than Mother. Based on these findings, the magistrate changed the primary residential parent from Mother to Father, revised the parenting schedule, and awarded Father sole decision making authority. Mother filed a timely request for a de novo rehearing before the Hamilton County Juvenile Court.

At a hearing on October 12, 2015, the juvenile court judge ordered the parties to attend mediation. On December 14, 2015, the parties returned to court stating they had attended mediation and presented a proposed parenting plan to the court. The juvenile court judge found that the submitted parenting plan only addressed the issue of parenting time and did not address or resolve the change in custody; therefore, the court conducted an evidentiary hearing and heard testimony from the parents, two of Mother's friends, and the paternal grandfather. In its final order entered on December 23, 2015, the juvenile court judge affirmed the magistrate's prior findings and recommendations, finding that Mother's contempt of court constituted a material change in circumstances and upheld the magistrate's decision to change the permanent parenting plan by designating Father as the primary residential parent, changing the parenting schedule, and awarding Father sole decision making authority. This appeal followed.

**ISSUE**

Mother presents one issue for this court to consider:

Whether the trial court erred in modifying the permanent parenting plan to change the primary residential parent from [Mother] to [Father] based upon the filing of a Contempt Petition, when there was no petition for modification pending nor a prayer for change of primary residential parent in the Contempt Petition.

Mother does not appeal the finding that her failure to abide by the permanent parenting plan was contemptuous.[3]

## STANDARD OF REVIEW

The issue on appeal presents a question of law. Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

"[T]he inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts." *In re Brown*, 470 S.W.3d at 442 (quoting *Black v. Blount*, 938 S.W.2d 394, 397–98 (Tenn. 1996)). Furthermore, the courts' power to punish for contempt

> is of immemorial antiquity, and is inherent in all courts as a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country.

*Id*. (citing *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013) (quoting *Graham v. Williamson*, 164 S.W. 781, 782 (1914)). We also note that the juvenile court may punish contempt of court by imposing a fine or imprisonment for disobeying a court order or for obstructing or interfering with court proceedings or the enforcement of a court's orders. Tenn. Code Ann. § 37–1–158. *See also State v. Ream*, No. M2007–00264–COA–R3–JV, 2008 WL 4367457, at *2 n.2 (Tenn. Ct. App. Sept. 18, 2008) (noting that the juvenile court has "the same authority as circuit or chancery court" with regard to contempt). Additionally, a juvenile court magistrate "has the powers of a trial judge" in the conduct of proceedings. Tenn. Code Ann. § 37–1–107(b); *In re Brown*, 470 S.W.3d at 440.

While misconduct of a party often reflects fitness of the parent for custody, "[c]ustodial arrangements should not be made with the goal of punishing a parent for misconduct." *Barnhill v. Barnhill*, 826 S.W.2d 443, 453–54 (Tenn. Ct. App. 1991). Similarly, although the failure to adhere to a parenting plan can constitute a change of

---

[3] "'A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law.'" *In re Brown*, 470 S.W.3d 433, 442 (Tenn. Ct. App. 2015) (citations omitted). Because the trial court's power to punish contempt is discretionary, appellate courts review a trial court's contempt citation using the abuse of discretion standard. *Id*. However, here neither party appeals the finding of contempt. Thus, this deferential standard of review is not applicable to the issue on appeal.

circumstance, custody decisions "are not intended to reward or to punish parents." *Massey-Holt v. Holt*, 255 S.W.3d 603, 610-11 (Tenn. Ct. App. 2007) (quoting *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)). Furthermore, "[i]t is well-settled that child custody and visitation should not be granted or withheld for punitive purposes." *Id*. at 611 (citation omitted).

Tenn. Code Ann. § 36-6-101 authorizes courts to modify permanent parenting plans. Specifically, the statute contemplates that "the issue" must be "before the court" before the court is authorized to modify a prior decree pertaining to custody. Tenn. Code Ann. § 36-6-101(B)(i). Moreover, a fundamental requirement of due process is "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *State v. Pearson*, 858 S.W.2d 879, 884 (Tenn. 1993) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). One of the primary purposes of pleadings is to give notice of the issues to be tried so that an opposing party can adequately prepare for trial. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011); *see also McClellan v. Bd. of Regents of the State Univ.*, 921 S.W.2d 684, 688 (Tenn. 1996).

In *Keisling v. Keisling*, 92 S.W.3d 374 (Tenn. 2002), our Tennessee Supreme Court decided the following issue similar to the case at bar: "whether the trial court erred in transferring child custody from one parent to the other when no petition requesting a change of custody had been filed at the time of the ruling." *Keisling,* 92 S.W.3d at 375. The mother in that case filed a petition to modify the father's visitation based on allegations of sexual abuse. *Id.* at 376. At a hearing, the father denied the accusations and orally requested to renew a prior petition to change custody based on the mother's baseless accusations. *Id.* The trial court then orally directed that custody of the parties' children would temporarily be changed to the father, despite the fact that neither party filed any pleading seeking such relief. *Id.* On appeal, the Tennessee Supreme Court held that because of the substantial risk that a child could be removed from his or her parent's care erroneously*,* **due process requires, at a minimum, a pleading be "filed informing the parent that a change in custody is being contemplated by the court."** *Id.* at 378 (emphasis added).[4] Additionally, the Court held that "[t]he magnitude of a parent's constitutional right to rear and have custody of his or her children necessitates that notice satisfying the constitutional requirements of due process be given where a change in custody is at issue." *Id.* at 380.

---

[4] The *Keisling* court considered three factors in determining the procedural protections demanded by a particular situation: "(1) the private interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Keisling*, 92 S.W.3d at 377-78 (internal citations omitted).

Here, the only issue "before the court" was Father's petition for contempt, in which Father prayed:

1. That said defendant(s) be cited to show cause for failure to comply with the orders of this Court.
2. That such further relief be granted to which petitioner may be entitled which may include incarceration for said contempt.

There was no prayer for a modification to the permanent parenting plan or a change of the primary residential parent, and there were no allegations or proof of neglect, abuse or unfitness of Mother. Nevertheless, Father argues on appeal that a change in custody was contemplated in his request for "such further relief" that Father may have been entitled to in his petition for contempt. We find this argument unpersuasive because basic due process required Father to have given notice reasonably calculated under all the circumstances, to apprise Mother of the pendency of the action, and afford her an opportunity to present her objections. *Id.* at 377. The magistrate raising the issue of custody *sua sponte* is not a pleading sufficient to afford Mother due process. As stated above, "[o]ne of the purposes of pleadings is to give notice of the issues to be tried so that the opposing party can adequately prepare for trial." *Id.*

Mother was never served with any pleading notifying her that Father may be designated as the primary residential parent, that Father may be awarded sole decision making authority, or that the parenting schedule and permanent parenting plan may be modified. Consequently, we have determined that the magnitude of Mother's constitutional right to rear and have custody of her child necessitates that notice satisfying the constitutional requirements of due process should have been given to her where a change in custody was at issue. *Id.* at 380.

### IN CONCLUSION

Therefore, to the extent the permanent parenting plan was modified, including changing the primary residential parent, awarding Father sole decision making authority, and modifying the parenting schedule, the judgment of the juvenile court is vacated, the finding of contempt notwithstanding, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal assessed against Father.

_____
FRANK G. CLEMENT JR., P.J., M.S.