IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2025

## IN RE CAYLA C.[1]

**Appeal from the Chancery Court for Lincoln County**
**No. AD 493   J. B. Cox, Chancellor**

_____

### No. M2024-01648-COA-R3-PT

_____

The mother of the minor child at issue appeals the termination of her parental rights. The trial court found that four grounds for termination had been proven and that termination of the mother's parental rights was in the minor child's best interest. Although we vacate the finding that the ground of persistence of conditions was established, we affirm the finding that three grounds for termination have been proven and that termination of the mother's parental rights is in the minor child's best interest. Accordingly, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which KENNY ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Savannah Oliver, Lewisburg, Tennessee, for the appellant, Carlie M.

Pat M. Fraley, Fayetteville, Tennessee, for the appellee, Mary S.

Karla Dianne Ogle, Fayetteville, Tennessee, Guardian ad Litem.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

The appellant, Carlie M. ("Mother"), is the mother of Cayla C., who was born in October 2022 in Winchester, Tennessee, at Southern Tennessee Regional Health System. Cayla tested positive at birth for marijuana (THC), cocaine, and amphetamines, and Mother

_____

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

tested positive for marijuana and cocaine. As a result, Cayla was transported to Erlanger Health Systems in Chattanooga, Tennessee, for treatment, where she remained for one month.

Due to the drug screens of Cayla and Mother, the Tennessee Department of Children's Services ("DCS") intervened and placed custody of Cayla with her maternal aunt, Amy H.,[2] upon discharge from Erlanger.[3] However, Cayla's aunt was unable to continue caring for her. Thus, DCS transferred custody of Cayla to a nonrelative, Mary S., on December 8, 2022, with whom Cayla has remained ever since.[4] Significantly, Cayla has never been in the care or custody of her mother.

On March 30, 2023, Mary S. ("Petitioner"), filed a petition to terminate Mother's parental rights and those of the putative father Christopher L.C.[5] At the filing of the petition, Mother joined in the petition consenting to the termination of her parental rights and those of the putative father. However, on April 13, 2023, Mother withdrew her consent and notified the court that she would be contesting the termination petition. Thus, Petitioner filed an amended petition on April 19, 2024, seeking, inter alia, to terminate the parental rights of Mother and Christopher L.C. Counsel was appointed to represent Mother, and an answer was filed on her behalf.[6] As for the putative father, he was served with process, but he never made an appearance and never filed an answer or responsive pleading. Thus, his parental rights were terminated by default judgment pursuant to Rule 55 of the Tennessee Rules of Civil Procedure, and he is not a party to this appeal.

Following discovery, which included taking the depositions of Mother and Petitioner, the case proceeded to trial on August 26, 2024. Three witnesses testified: Mother, Petitioner, and Petitioner's father, Ricky K. Additionally, several exhibits were admitted into evidence, including a certified copy of the record from the juvenile court case, number 2022-JC-91, and medical records from Southern Tennessee Regional Health

---

[2] Amy H. is also referred to in the proceedings as Amy G.

[3] The Tennessee Department of Children's Services filed the initial "Petition for Dependency and Neglect and Petition for Temporary Custody with Relative Parent and/or in the Alternative for the Relief Prayed for Herein" on November 28, 2022.

[4] One month later, on January 31, 2023, Mary S. filed a petition for custody of Cayla. She obtained an order of emergency custody of Cayla on February 1, 2023, followed by an order of temporary custody of Cayla on February 8, 2023, both entered in the Juvenile Court of Lincoln County, Tennessee, in the matter of *Cayla [C.]*, Case No. 2022-JC-91.

[5] Cayla was five months old when the petition to terminate was filed.

[6] Mother was represented by four attorneys in the trial court proceedings; the first three withdrew with leave of court based on Mother's failure to cooperate.

System, where Cayla was born, and Erlanger Health System, where Cayla was treated following her birth.

Following the conclusion of the trial, the trial court entered a final order in which it concluded that Mother's parental rights should be terminated and that Mary S. be granted permission to adopt Cayla. The trial court made numerous findings of fact, including the following, in which it refers to Mother as Respondent:

11. Respondent has never had custody of the child since birth.
12. During her pregnancy, Respondent used marijuana, cocaine, and methamphetamine resulting in the child being born drug dependent.
13. Respondent had almost no prenatal care prior to delivery.
14. Upon delivery, Respondent tested positive for marijuana and cocaine.
15. The child tested positive for marijuana, cocaine, and amphetamines.
16. DCS took custody of the child based on it being born drug dependent.
17. DCS, through the Juvenile Court, placed the child with Amy [H., the maternal aunt].
18. Amy [H.] could not take care of the child, and the child was placed with Petitioner.
19. Subsequent to the birth of the child, Respondent has continued to use drugs.

.     .     .

21. Respondent frankly admits that it is in her child's best interest for her parental rights to be terminated, she just wants to dictate who she surrenders to.

.     .     .

25. Respondent has no home.
26. Respondent has no employment.
27. Respondent has pending charges in Lincoln County, Tennessee, and in Madison County, Alabama.
28. Respondent has never paid support for this child.
29. Respondent has never visited with the child.
30. Respondent concedes that the child would not know her.
31. Respondent concedes that there is no parent/child relationship between her and the child.
32. She concedes that the child would not know her.
33. She concedes that she does not have custody of any of her six children.
34. She is presently staying with her aunt at 10 Short Creek Rd. She is there due to her aunt's generosity, having nowhere else to go.

The court also found that her oldest child was born drug dependent, that she admits having an ongoing drug problem since 2012, that she has had six children but has custody of none of them, and that she has consented to the termination of her parental rights to some of her children. The court also found that she consents to the adoption of Cayla by the same couple that adopted her fifth child, because they will allow her to visit, but does not consent to Petitioner adopting Cayla.

Based on these and other facts, the court found that Petitioner had proven four grounds for termination of Mother's parental rights by clear and convincing evidence, specifically: (1) severe abuse of the child pursuant to Tennessee Code Annotated § 37-1-102(b)(27); (2) abandonment by failing to support Cayla; (3) abandonment by failing to visit Cayla; and (4) persistence of conditions. Then, after conducting a lengthy analysis of the statutory best interest factors, which we discuss below, the court found termination of Mother's parental rights to be in Cayla's best interest. Based on these findings, the court terminated Mother's parental rights.

This appeal followed.

## ISSUES

Mother only presents one issue, whether the termination of her parental rights is in Cayla's best interest.

Although she does not challenge any of the grounds for terminating her parental rights, we shall also consider whether Petitioner proved a ground for termination by clear and convincing evidence as mandated by *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016), stating that we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[.]" *Id*. at 525.

## STANDARD OF REVIEW

Under both the United States and Tennessee constitutions, "[p]arents have a fundamental constitutional interest in the care and custody of their children." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the

correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citations omitted).

## ANALYSIS

### I. GROUNDS

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

#### A. Severe Abuse

The trial court made the following finding regarding the ground of Severe Abuse:

> While the child was in utero, [Mother] regularly used drugs, including amphetamines, cocaine, and marijuana, knowing she was pregnant. This is severe abuse of the child pursuant to Tennessee Code Annotated [§ 37-1-102(b)(27)]. Mother testified to this course of conduct before this Court. The Court is clearly convinced that Petitioner has carried her burden of proving severe abuse by Respondent against the child.

Petitioner established that Cayla tested positive at birth for marijuana (THC), cocaine, and amphetamines and Mother tested positive for marijuana and cocaine. Moreover, Mother presented no evidence to challenge this evidence or to challenge the trial court's findings that Mother regularly used drugs knowing she was pregnant with Cayla. Further, Mother could not quantify how often or how many times she used cocaine after she knew she was pregnant with Cayla, as the following colloquy with the court reveals:

THE COURT: How many times did you do cocaine after you knew you were pregnant with that child?
THE WITNESS: I don't recall.
THE COURT: A lot; wasn't it?
THE WITNESS: I don't recall.
THE COURT: How many times did you do it after—how many times did you do it after the child was born?
THE WITNESS: I don't recall.
THE COURT: Okay. Does that mean you didn't do it at all, or you did it and you can't remember the number, it might be so high?
THE WITNESS: It just—I don't recall.

Based on the foregoing and additional evidence in the record, we affirm the trial court's determination that Petitioner proved by clear and convincing evidence the ground of severe abuse of Cayla pursuant to Tennessee Code Annotated § 37-1-102(b)(27).

B. Abandonment by Failure to Support

The trial court found Petitioner proved that Mother abandoned Cayla by failure to support as provided in Tennessee Code Annotated §§ 36-1-102(1)(A)(i) and 36-1-113(g)(1).

Tennessee Code Annotated § 36-1-102(1) was amended prior to the filing of the petition and now provides:

> For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, **for the applicable time period,** to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant time period[.]

Tenn. Code Ann. § 36-1-102(1)(D) (emphasis added). And because Cayla was less than four years old at the time of the filing of the amended petition on April 19, 2024, the applicable period to consider is the three consecutive months immediately preceding the

- 6 -

filing of the amended petition, which is January 19, 2024, to April 18, 2024.[7] *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(*b*).[8]

The trial court found that Mother had not paid any support for Cayla, stating that the testimony showed that even when money came into Mother's hands, "she offered none of it to support her child." When asked if she had offered any money to Petitioner to help her support Cayla, Mother admitted that she had never offered any money or other form of support to Petitioner to support Cayla. Further, Mother admitted that she provided some support for her other children, stating, "[I]t's not like it hasn't went to any of my children." She also testified that she earned between $400 and $500 a week, although it varies. Mother also stated that she provided some support when her sister had custody of Cayla, which was a brief one-month period, but not since Petitioner has had custody, which was during the applicable three-month period.

Based on this and other evidence, the trial court made the finding that "[Mother] has never paid support for this child." While the evidence vaguely suggests that Mother provided some support while her sister had custody, which was only for a one-month period falling outside the three-month period at issue under the abandonment statute, the record fully supports the trial court's finding that Mother failed to support Cayla during the applicable three-month period.[9]

Accordingly, we affirm the trial court's finding that Petitioner proved by clear and convincing evidence the ground of abandonment for failing to support Cayla.

### C. Abandonment by Failure to Visit

---

[7] The second amended petition, which is the operative pleading in this case, was filed on April 19, 2024.

[8] Tennessee Code Annotated § 36-1-102(1)(A)(i)(*b*) reads:

If the child is less than four (4) years of age at the time of the filing of a petition for termination of parental rights, for a period of three (3) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

[9] As for "willfulness," on July 1, 2018, the Tennessee General Assembly amended Tennessee Code Annotated § 36-1-102(1)(A) to remove the element of willfulness from the definition of abandonment by failure to support or visit. Accordingly, rather than being an element of this ground, Tennessee Code Annotated § 36-1-102(1) provides it as an affirmative defense, and Mother failed to plead or otherwise establish that her failure to support Cayla was not willful.

The trial court also found that Petitioner proved the ground of abandonment by failing to visit Cayla.

Regarding the ground of failing to visit, the court found that Mother "has never visited with the child." Significantly, Mother provided no evidence to contradict this finding except for claiming that she visited Cayla while she was in the hospital and while in the custody of her sister, which ended when Cayla was two months old.

As was the case with failing to support, the applicable period to consider is the three consecutive months immediately preceding the filing of the amended petition. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(*b*) and § 36-1-102(1)(D). The record fully supports the trial court's finding that Mother did not visit Cayla during this period. Thus, we affirm on this ground.

## D. Persistence of Conditions

The trial court found that the ground of persistence of conditions was proven by clear and convincing evidence. We, however, have determined that an essential element of this ground has not been established, that "[t]he child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months[.]" Tenn. Code Ann. § 36-1-113(g)(3). Cayla never resided in Mother's home. Thus, she was not removed from Mother's home. Accordingly, we vacate the finding that this ground was established.

Nevertheless, we affirm the trial court's findings that three other grounds were proven by clear and convincing evidence, and the statute only requires that one ground be established. *See In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c) (noting that to terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence and that termination of the parent's parental rights is in the child's best interest).

Because we have determined that at least one statutory ground for terminating Mother's parental rights has been proven, we must now decide if Petitioner has proven, by clear and convincing evidence, that termination of Mother's rights is in Cayla's best interest. Tenn. Code Ann. § 36-1-113(c); *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994).

## II. CAYLA'S BEST INTEREST

Once a court has found that at least one ground for termination has been established, the interests of parent and child diverge. *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination is in the child's best interest. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

In determining whether termination of parental rights is in a child's best interest, courts must consider the non-exhaustive list of statutory factors in Tennessee Code Annotated § 36-1-113(i)(1).[10] *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). These statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (citations omitted).

The trial court made specific findings regarding each of the relevant statutory best interest factors and concluded that all but two favored termination of Mother's parental rights.[11]

Factor (A) concerns the effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority. The trial court found that Cayla "knows no other home but for the Petitioner," that Cayla "has already benefited from Petitioner's dedication to her health and well-being and removal from that would be detrimental to this child; therefore, the effect of termination is critical, and in this case, absolutely necessary."

As for factor (B), which considers the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition, the court found that Cayla "has thoroughly bonded with Petitioner and has been in her continuous care and control for a significant period of time," and "Petitioner has met all of the child's needs and more." The court also found that placing Cayla with Mother "is not even what Mother is arguing for, and she has acknowledged her inability to parent. At the time of the hearing, Mother admitted that the child would not know her, and that she had ongoing criminal issues in at least two places." The court also noted that none of

---

[10] When the termination petition was filed, the statute, as amended, contained a non-exclusive list of twenty non-exclusive best interest factors. *See* Tenn. Code Ann. § 36-1-113(i) (effective April 22, 2021). And we have previously stated that the amended statute applies to petitions for termination filed on or after April 22, 2021." *In re Riley S.*, No. M2020-01602-COA-R3-PT, 2022 WL 128482, at *14 n.10 (Tenn. Ct. App. Jan. 14, 2022).

[11] The court found that two factors were not relevant while all other factors favored termination of Mother's parental rights.

Mother's six children are in her care and "[p]lacing the child back with mother would be a dangerous and irresponsible act."

Factor (C) concerns whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs. The trial court found that Mother "has not demonstrated any continuity and stability whatsoever in her life, much less the continuity and stability required to meet the child's basic needs." It went on to find that Mother has never met Cayla's basic needs, "she has no real intention of doing so," and "[h]er only stated desire is to have others adopt the child for her own reasons." Thus, the court concluded that Mother has "failed in every way to demonstrate continuity or stability in meeting the child's needs."

Factor (D) considers whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment. In this regard, the court found:

> There is no present attachment between Mother and the child. The child was taken from Mother at birth and has never developed any bond with Respondent. Mother concedes that she cannot presently create said attachment. She intends for others to raise and adopt this child as she has argued in this case.

Factor (E) concerns whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child. As noted earlier, the court again found that there has been no visitation with the child. Further, the court found, "[t]here has been no contact that could cultivate a positive relationship."

Factor (F) concerns whether the child is fearful of living in the parent's home. The court found that Cayla is not fearful of living in Mother's home because she has never known Mother and Mother does not have a home.

The court found factor (G) was not applicable.

As for factor (H), whether the child has created a healthy parental attachment with another person or persons in the absence of the parent, the court found that Cayla has a healthy parental attachment with Petitioner and her family, which should not be disturbed.

Factor (I) concerns whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage. In this regard, the trial court found that Cayla does

not have an emotionally significant relationship with her siblings, indeed she does not know them. The court went on to find:

> Even [Mother] began this litigation in favor of and consenting to Petitioner's adopting the child. It was only after she found another family to adopt this child's siblings that she revoked her consent. The Court is not convinced of her claims that the siblings should be together. They do not have any demonstrated emotional attachment.

Factor (J) concerns whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner. As for this factor, the trial court found that Mother "has continually battled addiction and criminal behavior, and she is still using suboxone. She lived with her drug dealer because she had nowhere else to go."

Factor (K) considers whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions. In this regard the court found that Mother has not taken advantage of any programs or services that would help her parent Cayla or help her make such adjustment of her circumstances that would help her be fit to parent.

The court found that factor (L) was not applicable.

Factor (M) concerns whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest. In this regard, the trial court reasoned, "[t]he only sense of urgency demonstrated by Respondent in this case is her urgency to change the people she wants to adopt the child. There has been no urgency whatsoever."

Factor (N) addresses whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult. In this regard, the trial court found that Cayla was born drug addicted due to Mother's use of drugs and that Cayla "has been the victim of severe abuse at the hands of [Mother] and those around her."

Factor (O) concerns whether the parent has ever provided safe and stable care for the child or any other child. The trial court found that Mother has never provided safe and stable care for the child or any of her six children.

- 11 -

As for factor (P), which addresses whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive, the court found that Mother:

> has not demonstrated an understanding of the basic needs of the child so that the child could thrive. She has no relationship. She has not parented any of her children. She has not shown any understanding other than the acknowledgement that she cannot parent the child. The Court agrees she cannot parent the child.

With regard to factor (Q), which pertains to whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive, the court found that Mother "has no home, is presently incarcerated,[12] and has a history of living hand to mouth at the charity of others. She has [] demonstrated neither an ability nor commitment to creating a home for this child."

Factor (R) addresses whether the physical environment of the parent's home is healthy and safe for the child, and the court found that Mother's physical environment is not safe nor healthy for Cayla.

As for factor (S), which concerns whether the parent has consistently provided more than token financial support for the child, the court found that Mother "has provided no support for this child."

Factor (T) considers whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child. The trial court stated that it "is concerned with the mental and emotional fitness of [Mother]. Without significant change, she is incapable of providing safe and stable care for the child."

Having made these best interest findings, the trial court concluded that Petitioner established by clear and convincing evidence that it is in Cayla's best interest to terminate Mother's parental rights.

Having conducted our own de novo review of the record, we find that the evidence preponderates in favor of the trial court's findings of fact and agree that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Mother's parental rights is in the best interest of Cayla. *See In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56. Accordingly, we affirm

---

[12] At the time of the hearing Mother was incarcerated at the Bedford County Jail.

the trial court's determination that termination of Mother's parental rights is in Cayla's best interest.

Because we have affirmed the trial court's determination that grounds for termination of Mother's parental rights have been proven and that termination of Mother's parental rights is in Cayla's best interest, we affirm the termination of Mother's parental rights to Cayla.

## IN CONCLUSION

Accordingly, we affirm the judgment of the trial court. Costs of appeal are assessed against the appellant, Carlie M.

_____
FRANK G. CLEMENT JR., P.J., M.S.