IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 3, 2025

## IN RE EMORY S.[1]

**Appeal from the Washington County Chancery Court**
**No. 23-AD-0164     J. Eddie Lauderback,[2] Judge**
_____

**No. E2024-00628-COA-R3-PT**
_____

In this parental termination case, the father appeals the termination of his parental rights to his child, Emory S. The trial court found that one ground for termination had been proven and that termination of his parental rights was in the child's best interest. Based on these findings, the court terminated the father's parental rights. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Erin D. McArdle, Johnson City, Tennessee, for the appellant, Malcolm S.

Rachel Ratliff, Johnson City, Tennessee, for the appellees, Kemper L. J. and Casie B. J.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On March 1, 2023, Casie B. J. and her husband Kemper L. J. (collectively "Petitioners"), filed a petition for adoption and termination of parental rights against Malcom S. ("Father"), regarding his minor child, Emory C. S., born in June 2016.[3]

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

[2] Judge Lauderback, Circuit Court Judge, Part I, of the First Judicial District, was sitting by interchange.

[3] When Petitioners filed the Petition to Terminate the Parental Rights of Father, Emory's mother, Cori E. T. joined in as a co-petitioner and consented to the termination of her parental rights. Mother later

Petitioner Casie J. has had physical custody of Emory since November 11, 2017, when Mother left Emory with her due to Mother's unstable housing and Father being incarcerated. Emory was sixteen-months old at the time.

Thereafter, Casie J. filed a petition in Johnson City Juvenile Court alleging that Emory was dependent and neglected. An order was entered in that court on May 1, 2018, naming Casie J. the temporary legal and physical custodian of Emory.[4]

Two months later, on July 2, 2018, the juvenile court held an evidentiary hearing on the petition. Father, who was in prison at that time, testified by phone. Mother was present for the hearing. Both parents waived their right to an attorney. Father consented to Casie J. retaining custody of Emory. In the order that followed, the Juvenile Court awarded physical and legal custody of Emory to Casie J. and she has retained custody of Emory ever since.[5]

Prior to Casie J. obtaining custody of Emory, Father was in a relationship with Casie J. while married to Mother, who was also a friend of Casie J. In March of 2017, Father and Casie J. were involved in an argument; what occurred during their argument is disputed. Nevertheless, it is undisputed that Father was arrested the next day based on a complaint Casie J. filed with law enforcement in which she alleged that Father hit and kicked her multiple times, pointed a loaded gun at her head, and shot at her feet. Based on her allegations, Father was arrested for aggravated assault and possession of a weapon by a convicted felon. Father was prosecuted in federal court and eventually entered a felony plea for which he was sentenced to eighty-four months in prison. Following his arrest in March of 2017, Father remained incarcerated until June of 2022, when he was released with the condition that he live at and complete a half-way house program. He lived at the halfway house in Knoxville, Tennessee until being discharged from parole in April of 2023,[6] during which time Father was gainfully employed.

---

withdrew her consent, necessitating the filing of a petition to terminate Mother's parental rights. Therefore, Petitioners commenced a separate but related action to terminate the parental rights of Emory's mother. *See In re Emory C. S.*, Washington County Chancery Court case number 23-AD-0695. While the two cases were tried together, the cases remained separate. The trial court terminated the mother's parental rights pursuant to an order entered on March 28, 2024, and she has not appealed the termination of her parental rights.

[4] Casie J. was awarded sole custody. Petitioners married thereafter, prior to filing the petition in this action.

[5] The juvenile court closed the case on December 10, 2020, leaving full legal and physical custody of Emory with Casie J. due to the continued incarceration of Father, and the lack of progress by Mother.

[6] Shortly thereafter, Father moved to Florida, where he resides with a girlfriend.

In the interim, on December 12, 2022, while he was residing at the halfway house in Knoxville, Father filed a petition for custody of Emory in the Johnson City Juvenile Court. When Father's petition came for hearing on January 9, 2023, Casie J. requested a continuance to retain counsel, which was granted. Before the custody case could be heard, Petitioners filed the petition to terminate Father's parental rights in this action. Consequently, Father's petition for custody was stayed pending the resolution of this action.

The petition to terminate Father's parental rights was filed on March 1, 2023. The petition alleged three grounds for termination; however, the trial court only found one ground had been proven, that being abandonment for failure to support pursuant to Tennessee Code Annotated section 36-1-113(g)(1) and section 36-1-102.[7]

Regarding the ground of abandonment for failing to support Emory, the petition alleged in pertinent part:

> 5. Pursuant to T.C.A. §§ 36-1-113(g)(1) and 36-1-102(I)(A)(i), [Father] has willfully failed to support the minor child in this matter for at least four months immediately preceding the filing of this Petition;
>
> 6.[Father] is not disabled, and he has not been incarcerated during the four months preceding the filing of this Petition. [Father] is and has been employed full time for some time;
>
> 7. [Father] has a legal duty to support the minor child in this matter;
>
> 8. [Father] has paid no child support for the minor child during the four months immediately preceding the filing of this Petition;
>
> 9. Pursuant to TENN. CODE ANN. § 36-1-102(1)(D), that a parent has only the means to make small payments is not a defense if no payments are made[.]

After retaining counsel, Father filed an answer in which he denied the foregoing allegations regarding support. He also denied that terminating his parental rights was in Emory's best interest.

---

[7] Petitioners do not appeal the trial court's ruling as to the other grounds. Thus, our discussion is limited to this one ground and the trial court's finding that termination of Father's parental rights was in Emory's best interest.

Following a trial on March 14, 2024, in which Petitioners, Father, Father's maternal grandmother, Father's girlfriend, and Mother testified, the trial court found Father's support of Emory "to be nothing more than 'token support.'"

> Although Father had just been released from prison, he testified he was required to work while in a halfway house, and in fact, worked at two (2) different jobs, before moving to Florida. There is no proof that Father paid any significant child support during the relevant four-month period. His purchase of 'clothes on two (2) occasions (which were rejected by Ms. J[.] due to being 'gang-related') and an effort to pay some minimal support through his attorney are found to be 'token' support

Based on these and other findings, the court found that Petitioners had proven by clear and convincing evidence the ground of abandonment for failing to support Emory.

After making numerous findings of fact concerning Emory's best interest, which we discuss in detail below, the court also concluded that termination of Father's parental rights was in Emory's best interest.

Having found one ground had been proven and that termination of Father's parental rights was in Emory's best interest, the trial court ordered that Father's parental rights to Emory be terminated.[8] This appeal followed.

## ISSUES

Father raises one issue in this appeal: "Whether the trial court erred in finding that [Father] willfully abandoned his child by clear and convincing evidence." Although he does not expressly challenge the finding that termination of his parental rights was shown by clear and convincing evidence to be in the best interest of Emory, we shall also discuss this issue as mandated by *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016), stating that we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[.]" *Id*. at 525.

## STANDARD OF REVIEW

Under both the United States and Tennessee constitutions, "[p]arents have a fundamental constitutional interest in the care and custody of their children." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

---

[8] As noted earlier, Mother's parental rights were also terminated, which decision Mother does not appeal. *See In re Emory C. S.*, Washington County Chancery Court case number 23-AD-0695.

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citations omitted).

ANALYSIS

I. GROUNDS

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

The trial court found Petitioners proved that Father abandoned Emory by failure to support as provided in Tenn. Code Ann. § 36-6-102(1)(A)(i) and Tenn. Code Ann. § 36-1-113(g)(1). Regarding the ground of abandonment for "failure to support," when the petition was filed on March 1, 2023, Tennessee Code Annotated § 36-1-102(1)(D) provided that "failed to support" or "failed to make reasonable payments toward [a] child's support" consists of "the failure, for a period of four (4) consecutive months [immediately preceding the filing of the petition to terminate the parental rights of the parent], to provide monetary support or the failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). The statute also defined "token support" as "support [that], under the circumstances . . . , is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). "That the parent had only the means or ability to make small

payments is not a defense to failure to support if no payments were made during the relevant four-month period[.]" Tenn. Code Ann. § 36-1-102(1)(D).

In 2018, Tennessee Code Annotated § 36-1-102(1)(A) was amended to remove the element of willfulness from the definition of abandonment by failure to support or visit. Accordingly, rather than include willfulness as an element of this ground, Tennessee Code Annotated § 36-1-102(1) provides it as an affirmative defense:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. **The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence**. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I), *enacted by* 2018 Tennessee Laws Pub. Ch. 875 (H.B. 1856), *eff.* July 1, 2018 (emphasis added); *see In re Traden R.*, No. M2023-00942-COA-R3-PT, 2024 WL 5074828, at *6–7 (Tenn. Ct. App. Dec. 11, 2024).

In this appeal, Father contends his failure to support was not willful. He also contends that his offers of financial support were refused. Petitioners counter insisting that, as Tenn. Code Ann. § 36-1-102(1)(1) states, the parent bears the burden of proving that failure to support was not willful, the defense must be proven by a preponderance of the evidence, and Father has not met that burden of proof.

While it is undisputed that Father provided no financial support by means of cash or checks during the relevant period, it is Father's contention that he attempted to provide clothing, shoes, other necessities and even money for the benefit of his son. We note, however, the offer of money was made through his counsel after the termination petition was filed, which was not during the relevant period. Father also contends that his ability to financially support Emory was limited because a minimum of 30% of his paycheck was given to the half-way house. However, as is stated in Tenn. Code Ann. § 36-1-102(1)(D), "[t]hat the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period[.]" In the case at bar, no payments were made during the relevant period.

Father testified that he was working the entire time he resided at the halfway house in Knoxville. For a time, he only worked at Calhoun's twenty hours per week. Thereafter, he added a second job because Calhoun's was not paying enough. Father testified that he sometimes worked sixty hours per week, making $13 per hour at Calhoun's twenty hours per week and forty hours per week for Innovate HVAC company making $16 per hour,

making an aggregate of $900 per week. Yet no financial payments were remitted to Petitioners for Emory's support during the relevant period.

Nevertheless, and as Father states in his brief, even with limiting circumstances, he attempted to support Emory by sending items of clothing, which Casie J. admits refusing. However, as Casie J. testified, she refused the clothing he sent because it contained "gang-related colors and symbols." She admittedly rejected these items due to Father's gang affiliation. Nevertheless, she contends that even if Father is credited with providing these items of clothing, they constitute token support at best realizing his income and ability to pay.

As the trial court noted in its final order,

> [Father] testified he was required to work while in a halfway house, and in fact, worked at two (2) different jobs, before moving to Florida. There is no proof that Father paid any significant child support during the relevant four-month period. His purchase of clothes on two (2) occasions (which were rejected by Ms. Johnson due to being "gang-related") and an effort to pay some minimal support through his attorney are found to be "token" support

We have determined that the evidence preponderates in favor of these findings. Furthermore, we have concluded, as the trial court did, that the evidence in the record clearly and convincingly established that Petitioners proved the ground of abandonment for failing to support Emory.

Accordingly, we affirm the trial court's holding that the ground of abandonment for failure to support was proven by clear and convincing evidence.

## II. THE CHILD'S BEST INTEREST

Once a court has found a parent to be unfit based on clear and convincing evidence of one or more grounds for termination, "the interests of parent and child diverge." *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination

is in the child's best interests. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

In determining whether termination of parental rights is in a child's best interest, courts must consider the non-exhaustive list of statutory factors in Tennessee Code Annotated § 36-1-113(i)(1). *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). These statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d at 679 (citations omitted).

The trial court made findings regarding each of the statutory best interest factors and concluded that some were not applicable while the others favored termination of Father's parental rights. We will discuss each.

The first factor to consider under Tennessee Code Annotated § 36-1-113(i)(1) addresses the effect termination "will have on the child's critical need for stability and continuity of placement throughout the child's minority[.]" Tenn. Code Ann. § 36-1-113(i)(1)(A). Regarding this factor the trial court found: "This factor favors termination. The child has lived with petitioners since November of 2017, almost 6 1/2 years. Petitioners' home is the only home he has ever known, and termination will allow this stability to continue." The evidence in the record supports this finding.

Factor (B) concerns "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition[.]" Tenn. Code Ann. § 36-1-113(i)(1)(B). The trial court found: "Uprooting the child after 6 1/2 years with the only 'parents' he has ever known is likely to cause an adverse emotional and psychological effect. The child suffers from ADHD and anxiety issues and a change of caretakers and physical environment could undoubtedly adversely affect those conditions." The record fully supports this finding.

Factor (C) concerns "[w]hether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs[.]" Tenn. Code Ann. § 36-1-113(i)(1)(C). The trial court found that Father has not demonstrated any continuity and stability in meeting Emory's basic needs. The evidence in the record supports this finding.

Factor (D) addresses "[w]hether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment[.]" Tenn. Code Ann. § 36-1-113(i)(1)(D). The trial court found that Father did not have any type of significant relationship with Emory. The evidence in the record fully supports this finding.

Factor (E) concerns "[w]hether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(E). As the trial court correctly found, Father had not maintained regular visitation or contact with Emory.

The trial court found that factors (F) and (G) were not applicable and we agree.

Factor (H) addresses "[w]hether the child has created a healthy parental attachment with another person or persons in the absence of the parent[.]" Tenn. Code Ann. § 36-1-113(i)(1)(H). The trial court found that "The child has created a very significant, healthy parental attachment with petitioners. They are, in effect, the only parents he has ever known[.]" The evidence in the record support these findings.

Factor (I) concerns "[w]hether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage[.]" Tenn. Code Ann. § 36-1-113(i)(1)(I). In this regard the trial court found that Emory had significant relationships with Petitioners' other children and the record supports this finding.

Factor (J) addresses "[w]hether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of . . . controlled substances . . . , which may render the parent unable to consistently care for the child in a safe and stable manner[.]" Tenn. Code Ann. § 36-1-113(i)(1)(J). The trial court found that Father had "demonstrated some stability . . . , however, this does not necessarily render a conclusion that it would be beneficial for the child to reside" with Father. The record supports the finding that it would not be beneficial for Emory to reside with Father.

As for factor (K), which addresses "[w]hether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions[,]" Tenn. Code Ann. § 36-1-113(i)(1)(K), the court found that "Father has taken advantage of some services and classes/training while incarcerated to try to improve his circumstances, conduct and conditions." The record supports these findings.

The court found factor (L) not applicable, and we agree.

Factor (M) considers "[w]hether the parent has demonstrated a sense of urgency in . . . seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest[.]" Tenn. Code Ann. § 36-1-113(i)(1)(M). The trial court found that Father delayed 6 months after being

released from prison before trying to seek custody of Emory. The evidence supports this finding.

The court found factor (N) not applicable, and we agree.

As for factor (O), which concerns "[w]hether the parent has ever provided safe and stable care for the child or any other child[,]" Tenn. Code Ann. § 36-1-113(i)(1)(O), the court found that Father initially cared for Emory when he was born; however, he had failed to provide safe and stable care for Emory in over six years. The record supports this finding.

Factor (P) concerns "[w]hether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive[.]" Tenn. Code Ann. § 36-1-113(i)(1)(P). The court found that Father offered proof of his home situation in Florida and an available school for Emory; however, he failed to address Emory's specific medical needs which Petitioner have addressed for the last six years.

Emory suffers from severe ADHD and anxiety for which he sees a doctor every three months for medication management of those issues and is doing reasonably well with medication. Father introduced no evidence to support a finding that he understands the basic and specific needs Emory requires to thrive. Thus, the record supports this finding.

Factor (Q) concerns "[w]hether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive." Tenn. Code Ann. § 36-1-113(i)(1)(Q). The trial court found that Father demonstrated his ability and commitment to maintaining a home that would meet Emory's needs. We respectfully disagree, being of the opinion that the finding is partially inconsistent with the trial court's finding regarding factor (P). As noted immediately above, Emory suffers from severe ADHD and anxiety for which he sees a doctor every three months for medication management of those issues. Father introduced no evidence to support a finding that he has the ability or commitment to maintain a home that meets Emory's specific needs. Accordingly, the evidence preponderates against the trial court's finding concerning this factor.

Factor (R) concerns whether the physical environment of the parent's home is healthy and safe for the child. The court found that the proof on this factor was unknown. We agree that the proof was insufficient to render an informed decision on this factor.

The trial court's last finding pertained to factor (S), which concerns "[w]hether the parent has consistently provided more than token financial support for the child[.]" Tenn. Code Ann. § 36-1-113(i)(1)(S). The trial court found that Father failed to consistently provide more than token financial support. We agree.

After considering each of these statutory factors and the combined weight of these factors, the trial court concluded Petitioners had proven by clear and convincing evidence that it was in the best interest of Emory that the parental rights of Father be terminated. Having conducted our own de novo review of the record, we agree that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Father's parental rights is in best interest of Emory. *In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56. Accordingly, we affirm the trial court's determination that termination of Father's parental rights is in Emory's best interest.

Because we have affirmed the trial court's determination that a ground for termination of Father's parental rights had been proven and that termination of Father's parental rights is in Emory's best interest, we affirm the termination of Father's parental rights to Emory.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court. Costs of appeal are assessed against the appellant, Malcolm S.

_____
FRANK G. CLEMENT JR., P.J., M.S.