FILED
09/08/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2025

## IN RE JUSTICE W. [1]

**Appeal from the Juvenile Court for Madison County**
**No. 61-55, 61-870   Christy R. Little, Judge**

_____

### No. W2025-00280-COA-R3-PT

_____

The mother and father of Justice W., a minor, appeal the termination of their parental rights. The trial court found that multiple grounds for termination had been proven against each parent and that termination of both parents' parental rights was in the child's best interest. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which KENNY ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Bob C. Hooper, Brownsville, Tennessee, for the appellant, Taniya W.

Angela Mueller, Trenton, Tennessee, for the appellant, Ka'Darius P.

Brandicus M. and LaQuisher M., pro se.[2]

Brittney Ballard, Jackson, Tennessee, Guardian ad Litem.

_____

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

[2] Brandicus M. and LaQuisher M., the petitioners in this matter, have not filed a brief or made an appearance in this court. They were, however, represented by Jennifer Covellis in the trial court proceedings.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The appellant, Taniya W. ("Mother"), is the mother of Justice W., born August 2016 in Jackson, Tennessee. The appellant, Ka'Darius P. ("Father"), was declared to be the father of Justice W. by order of the Juvenile Court of Madison County, Tennessee on October 17, 2017.

On February 10, 2022, the Tennessee Department of Children's Services ("DCS") filed a petition with the Juvenile Court for Madison County to adjudicate Justice and two of her half-siblings, Josiah and Jeremiah as dependent and neglected and requested a change of custody. The petition was based on allegations that, inter alia, Mother was homeless and using illicit drugs, that the children were exposed to illicit drugs, and they were not being properly supervised by Mother.[3] At the time of the petition, Justice was in the sole custody of Mother.

On the same day, the juvenile court entered a protective custody order and then on February 15, a temporary custody order placing Justice in the custody of her paternal grandmother, Breeona S. The orders required Mother to participate in an alcohol and drug assessment, parenting classes, and to submit to random drug screens. The court also ordered that visitation between Mother and children would be supervised pending further orders of the court.

On August 23, 2022, the Juvenile Court of Madison County, Tennessee conducted an adjudicatory and dispositional hearing on the dependency and neglect petition filed by DCS. Counsel for Mother and Father were present but neither parent attended the hearing.[4] In the order that followed, the court ruled that DCS had proven by clear and convincing evidence that Justice and her sibling Josiah were dependent and neglected and "victims of severe abuse as defined at T.C.A. 37-1-102(27)(A), perpetrated by their mother, Taniya [W.]." The court's written findings included the following:

> 3. It is contrary to the welfare of the minor children to remain in the custody of the parents.
>
> 4. At the time of removal, it was reasonable to make no other efforts to maintain the children in the home due to the circumstances of the family and child. However, the Department did make all reasonable efforts to prevent

---

[3] The court appointed Brittney Ballard as the Guardian ad Litem, Bob Hooper as attorney for Mother, and Angela Mueller as attorney for Father.

[4] Father was personally served with the dependency and neglect petition and the court expressly found that Mother was served by publication.

foster care by identifying (or attempting to identify) a willing and fit relative to assume custody. The Department also completed hair follicles on the children and sought and obtained an order of publication on the mother.
5. The children, Josiah and Justice [W.] were positive for cocaine and various cocaine metabolites on their hair follicles. The Court found that Josiah and Justice were victims of severe abuse.

The order also stated that DCS had made several failed attempts to locate Mother until:

On February 8, 2022, [DCS case manager] Maxwell was able to obtain a number and address for the children's [maternal] grandmother, Patricia [H]. Upon arrival at Ms. [H]'s address, the mother, [Ms. W.] was there along with the child, Josiah. [Mother] admitted to the use of drugs and submitted to a urine drug screen. The results were positive for cocaine and THC. [Mother] reported the use of cocaine on February 6, 2022. [Mother] further stated that [she] was aware of her active warrants and that she is currently homeless.

The order stated that Father had been incarcerated at the Madison County Penal Farm at the time of the removal; thus, Justice could not be placed with him. And, significantly, the court held that all three of Mother's children, including Justice and two half-siblings, Jeremiah and Josiah, "all suffered from abuse and/or neglect. Therefore, pursuant to T.C.A. 37-1-129(a)(2) [the court] finds that the children Josiah [W.] and Justice [W.] are also victims of severe child abuse as defined at T.C.A. 37-1-102(27) (A), perpetrated their mother, Taniya [W.]."[5] The order also stated:

10. The mother shall have NO Contact with the children. The mother must petition and appear before the Court, before the Court will consider lifting the NO Contact Order and/or to allow visits.

11. The respective fathers of the children may have supervised visits to be supervised by the custodian(s) and at the custodian(s)' discretion.

Thereafter, pursuant to an order entered on August 25, 2022, custody of Justice was placed with a "family friend," Lurina B.[6]  However, after several months, Lurina B.

---

[5] The order also stated: "In accordance with Tenn. R. Juv. P. 36(e), this is a final order as to the Defendant(s) Taniya [W.] . . . and [Ka'Darius P.], and any appeal from this order must be made to the Circuit Court within ten (10) days, excluding non-judicial days, of the entry of this order." The order, which was entered on October 11, 2022, also closed the dependency and neglect case.

[6] During a hearing on June 14, 2022, Father informed the court that that his mother, Breeona S., the current legal custodian of Justice, was in the hospital and that his younger brothers and his younger sister

realized she was financially unable to continue caring for Justice and encouraged Brandicus M. and his wife LaQuisher M. to seek custody.

With the support of Lurina B., Brandicus M. and LaQuisher M. filed a petition on July 13, 2023, seeking custody of Justice. The petition was granted pursuant to an order entered on January 9, 2024, and Justice was placed in their legal and physical custody, where she has remained ever since.[7]

On April 25, 2024, Brandicus M. and LaQuisher M. ("Petitioners") commenced this action by filing a petition to terminate the parental rights of Mother and Father. They alleged multiple grounds including abandonment by failure to visit or support, severe abuse, and failure to assume legal and physical custody.

Mother and Father were both personally served with the petition to terminate their parental rights. Attorney Bob C. Hooper was appointed to represent Mother, and he timely filed an answer on her behalf challenging the petition. Father, however, did not make an appearance and did not file an answer or responsive pleading to challenge the petition to terminate his parental rights.

Because Father failed to file an answer or responsive pleading to challenge the petition to terminate his parental rights, Petitioners filed a motion seeking a default judgment against Father. The motion was heard on August 6, 2024, at which time the court granted a default judgment against Father pursuant to Tennessee Rule of Civil Procedure 55. The order granting the default judgment was entered on October 29, 2024. During the hearing on the motion for default, the court also set the case to be tried on November 12, 2024.

The case came on for trial on November 12, 2024. Mother and her attorney Bob C. Hooper participated in the trial. Angela Mueller, court appointed counsel for Father, was in attendance, but Father was not. Brittney Ballard, the Guardian ad Litem, also participated at trial.

---

were all assisting in the care of Justice. DCS responded noting that it was unaware of this living situation, and it would immediately investigate. DCS also informed the court that it had been unsuccessful in locating Mother. Thus, on motion of DCS, the court entered an order for publication and postponed the adjudicatory and dispositional hearing.

Custody of Justice was transferred from Breeona S. due to her instability as she was residing in a hotel with others, including Father, but, as Tracy E. testified at trial, "he tried to care for [Justice] but it just wasn't any consistency with he and his mother," and necessary "things were not provided for [Justice]."

[7] However, Petitioners obtained physical custody of Justice months before the court order was entered.

During the trial, the court heard testimony from Petitioners; Mother; Tracy E., a family service worker employed by DCS; Lurina B.; and Michael P., Mother's current boyfriend. Numerous exhibits were also admitted into evidence including the order on adjudicatory and dispositional hearing and the order of severe abuse entered October 11, 2022.

In the final judgment that followed, in which the court made numerous specific findings of fact and conclusions of law, the court concluded that Petitioners had proven grounds for termination against each parent. As for Mother, the court found that two grounds for termination had been proven, specifically: (1) severe abuse pursuant to Tennessee Code Annotated § 36-1-113(g)(4) and as defined in § 37-1-102; and (2) abandonment for failure to support Justice pursuant to § 36-1-113(g)(1) and § 36-1-102(1)(A)(i)(*a*). As for Father, the court found that three grounds had been proven, specifically: (1) abandonment for failure to support pursuant to § 36-1-113(g)(1) and § 36-1-102(1)(A)(i)(*a*); (2) abandonment for failure to visit pursuant to § 36-1-113(g)(1) and § 36-1-102(1)(A)(i)(*a*); and (3) failure to manifest an ability or a willingness to assume physical or legal custody of Justice § 36-1-113(g)(14). The court also found that termination of both parents' parental rights was in Justice's best interest. Accordingly, the court granted the petition and terminated the parental rights of Mother and Father.

Both parents appealed.

## ISSUES

Father presents one issue, which reads: "The Madison County Juvenile Court erred in finding that it was in the best interest of the minor child to terminate parental rights." And Mother presents one issue, which reads: "Did the lack of due process of service for Appellant Mother in the custody proceeding filed by the Appellees rise to a level that the termination of the parental rights of the Appellant Mother should be declared void, overturned and/or dismissed?"

Thus, neither parent challenges any of the grounds for terminating their parental rights and Father only challenges the best interest findings. Nevertheless, we shall consider whether Petitioners proved a ground for termination as to each parent and whether termination of their parental rights was in Justice's best interest, as mandated by *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016) (stating that this court must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[.]"). *Id*. at 525.

## STANDARD OF REVIEW

Under both the United States and Tennessee constitutions, "[p]arents have a fundamental constitutional interest in the care and custody of their children." *In re Connor*

- 5 -

*B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citations omitted).

## ANALYSIS

### I. PETITIONERS' CUSTODY PROCEEDING

We begin with Mother's only issue: "Did the lack of due process of service for Appellant Mother in the custody proceeding filed by [Petitioners] rise to a level that the termination of the parental rights of the Appellant Mother should be declared void, overturned and/or dismissed?"

Two related cases preceded the filing of this petition to terminate Mother's parental rights. The first was the Dependency and Neglect action filed by DCS that serves as the genesis of these proceedings. Mother was personally served with process and was appointed counsel, who represented her throughout the dependency and neglect proceeding as well as this termination proceeding.

The other action, the one Mother references in making this argument, was Petitioners' petition to obtain custody of Justice. Mother insists that she was not served with process in that action and claims this defect should render the juvenile court's decision in this termination proceeding void. The basis of this argument, as stated in Mother' brief in this appeal, is that if Mother had been served and given notice of the custody petition, "Mother could certainly have advocated that she had been drug free since June of 2022 . . . [and] Mother could have told the Court that she was in a position to regain custody immediately or at minimum in the near-term."

We find this contention unpersuasive for several reasons but will limit our discussion to the fact that Mother was under a no contact order when Petitioners' custody petition was filed,[8] which order remained in effect because Mother took no action to modify or set aside the no contact order. As the juvenile court's no contact order specifies, Mother was prohibited from communicating with or being in the presence of Justice without court approval and, as Mother acknowledges in her brief in this appeal, "The Court further ordered at that hearing that mother will have no contact with the children and that mother must petition [or] appear before the court before the court will consider lifting the no contact order."[9] Thus, Mother had the opportunity to make an application to the juvenile court to visit or communicate with Justice and/or to regain custody, but she never did. Moreover, there was no reason for Mother to delay seeking custody or visitation with Justice if she believed she could establish that she was drug free and in a position to regain custody or at least visitation.[10] In fact, failing to do so was contra to one of the best interest factors a court is to consider, that being factor (M). This factor considers whether the parent has demonstrated a sense of urgency in seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest. *See* Tennessee Code Annotated § 36-1-113(i)(1)(M).

Accordingly, we find this issue unavailing.

II. GROUNDS

---

[8] The no contact order was issued by the juvenile court on February 15, 2022, and it remains in effect. The custody petition Mother references was filed on July 13, 2023, more than a year later.

[9] The no contact order was based on a finding of severe abuse, which has serious ramifications: "Such a finding triggers other statutory provisions, including a prohibition on returning the child to the home of any person who engaged in or knowingly permitted the abuse absent consideration of various reports and recommendations." *In re Samaria S.*, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011) (citing Tenn. Code Ann. § 37-1-130(c)).

[10] We also find it pertinent that the juvenile court, which issued the no contact order, is the same court that presided over Petitioner's custody petition and this termination proceeding.

- 7 -

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

## A. Severe Abuse - Mother

The trial court made the following findings regarding the ground of severe abuse:

25. Termination of Parental Rights was sought pursuant to T.C.A. § 36-1-113(g)(4): The Respondent Mother has been found to have committed severe child abuse, as defined in § 37-1-102.

26. The Court finds that this ground was proven by clear and convincing evidence against the Respondent Mother, Taniya [W.].

27. The Madison County Juvenile Court made a finding that the child was a victim of severe abuse perpetrated by the Respondent Mother (entered as Exhibit 15 with supporting drug screens entered as Exhibit 7) on October 11, 2022.

28. The Court finds, in light of all the foregoing, that by clear and convincing evidence, the Respondent, Taniya [W], has been previously found by this Court to have committed severe abuse against this child.

Although Mother does not challenge this finding, we are required to determine if the ground was properly found. *See In re Carrington H.*, 483 S.W.3d at 525.

A finding that a parent has committed severe child abuse, in and of itself, constitutes a ground for termination of parental rights. Tenn. Code Ann. § 37-1-130(g)(4) ("the parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court.").

Severe abuse may be established as a ground for termination pursuant to Tennessee Code Annotated § 36-1-113(g)(4) if:

The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.][11]

---

[11] The quoted statute reflects the version of Tennessee Code Annotated § 36-1-113(g)(4) in effect as of April 25, 2024, the date of Petitioners' action to terminate parental rights. "The version of the statute

As is the case here, the ground of severe abuse by Mother was proved by a prior court order finding severe child abuse. As a result, the issue of whether severe abuse occurred may not be re-litigated in this termination action. *In re Samaria S.*, 347 S.W.3d at 201 (citing *M.S.,* 2005 WL 549141, at \*10).

The order finding severe child abuse of Justice by Mother in the dependency and neglect action became a final judgment because Mother did not appeal that order. Further, that order was admitted into evidence without objection as an exhibit during this termination trial. Therefore, the severe abuse finding is subject to the doctrine of *res judicata. See In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012).

We apply the doctrine of *res judicata* "to prevent a parent from re-litigating whether she committed severe child abuse in a later termination of parental rights proceeding, when such a finding ha[s] been made in a previous dependency and neglect action." *In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010). Because the severe abuse finding against Mother in the October 11, 2022 order satisfies the "under any prior order of a court" language in Tennessee Code Annotated § 36-1-113(g)(4), we conclude that the trial court properly determined that Petitioners proved this ground for termination by clear and convincing evidence. Accordingly, we affirm.

## B. Abandonment by Failure to Support - Mother

The trial court found Petitioners proved that Mother abandoned Justice by failure to support as provided in Tenn. Code Ann. §§ 36-6-102(1)(A)(i)(*a*) and 36-1-113(g)(1).

Tennessee Code Annotated § 36-1-102(1) was amended prior to the filing of the petition and now provides:

> For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for the applicable time period, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant time period[.]

---

in effect at the time of the petition's filing controls [the] action." *In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

Tenn. Code Ann. § 36-1-102(1)(D). And because Justice was more than four years old at the time of the filing of the petition on April 25, 2024, the applicable period to consider is the four consecutive months immediately preceding the filing of the petition, which is December 25, 2023, to April 24, 2024. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(*a*).[12]

The trial court found that Mother had not provided any financial support for Justice, stating:

> 22. Respondent Mother has not done anything to support her child during the relevant time frame despite her ability to do so. She has not provided gifts, cards, letters, or anything of the sort. Lurina [B.], former custodian of the minor child, testified that Mother would not assist her financially in supporting the child. Ms. [B.] even provided Mother the child's Christmas list upon Mother's insistence, yet Mother did not follow through and provide anything for the child. By Mother's own admission, she was employed and working during the relevant timeframe, however, she did not provide any support for the child. The Petitioners confirmed that neither of them had ever[] received any financial support by the Mother.

Based on these and other facts, the trial court found that Petitioners had proven by clear and convincing evidence that Mother abandoned Justice by failing to provide meaningful support for the four months prior to the filing of the petition.

The evidence in this record preponderates in favor of the trial court's findings of fact and these facts clearly and convincingly establish the ground of abandonment by failing to support Justice. Accordingly, we affirm the trial court on this ground.

### C. Abandonment by Failure to Visit or Support - Father

Relying on the same applicable period, the trial court found that Father had not visited Justice and had not provided any financial support for Justice, stating:

---

[12] Tennessee Code Annotated § 36-1-102(1)(A)(i)(*a*) reads:

If the child is four (4) years of age or more at the time of the filing of a petition for termination of parental rights, for a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

20. Respondent Father has not visited the child at all during the relevant timeframe. He has made no attempts to visit nor filed anything with the Court in an attempt to visit.

21. Respondent Father has not done anything to support his child during the relevant timeframe. He has not provided gifts, cards, letters, or anything of the sort.

Based on these and other facts, the trial court found that Petitioners had proven by clear and convincing evidence that Father abandoned Justice by failing to visit and failing to provide meaningful support for the four months prior to the filing of the petition.

The only testimony regarding support or visitation by Father came from Lurina B. and Petitioners, and all three testified that Father provided no support and did not visit during the relevant period. Specifically, Petitioners testified that he did not provide any support and he did not visit. The essence of Lurina B.'s testimony, who did not have custody of Justice during the relevant period, is set forth in the following colloquy that occurred during the trial, with the questions posed by counsel and the court:

A. He came to visit her. He came to see her on Christmas. He bought her a gift. After Christmas of 2022, I seen him about one more time in February of 2023, and I haven't talked to him or heard anything since.

Q. So with that year that you had custody, you can think of two times that dad came to visit?

A. He came about three times.

.    .    .

Q. Would he call on the phone to talk to her or anything?

A. Yes, he did.

Q. How frequently was he doing that?

A. About once a month.

.    .    .

Q. Besides the Christmas gift that he got her in 2022, did he do anything else to support Justice?

A. Just bought her a Happy Meal.

Q. How many times?

A. Three.

Q. Did he ever give you any money to help?

A. No, ma'am.

Q. Do you know if he was working at the time?

A. He said he was working in Memphis somewhere.

The foregoing established that Father's support was token at best, and his visits while Lurina B. was the custodian were token as well. Moreover, the referenced support and visits did not occur during the four-month period preceding the filing of the petition because Petitioners assumed physical custody of Justice in July of 2023, which precedes the applicable four-month period. And Petitioners testified that Father did not visit or support Justice during the applicable four-month period. For his part, Brandicus M. stated that Father had not reached out in any way to visit with Justice. He also testified that since Justice has been in Petitioners' custody, he and his wife have provided for all her care and maintenance.

His wife, Laquisher M., testified similarly. She stated that during the four-month period, they did not receive any type of financial support from Father, nor any offers to help with clothes or gifts for Justice.

Having considered the foregoing and the evidence in this record, we conclude as the trial court did that Petitioners clearly and convincingly established the grounds of abandonment based on Father failing to visit and failing to support Justice. Accordingly, we affirm the trial court on these two grounds.

### D. Failure to Manifest an Ability to Assume Custody - Father

The trial court found Petitioners proved that Father failed to manifest an ability or a willingness to assume physical or legal custody of Justice pursuant to Tennessee Code Annotated § 36-1-113(g)(14).

This statutory ground provides:

A parent . . . has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial

- 12 -

responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14).

To prove this ground, Petitioners were required to show by clear and convincing evidence that (1) Father failed to manifest either an ability *or* willingness to assume custody of or financial responsibility for Justice, and (2) returning Justice to Father's custody would pose a risk of substantial harm to Justice's welfare. *In re Neveah M.*, 614 S.W.3d 659, 674, 677 (Tenn. 2020); *In re Jeremiah S.*, No. W2019-00610-COA-R3-PT, 2020 WL 1951880, at *6 (Tenn. Ct. App. Apr. 23, 2020) ("[T]he petitioner must prove each element by clear and convincing evidence.").

As this court explained in *In re Elizabeth Y.*, No. E2023-01448-COA-R3-PT, 2024 WL 3738701 (Tenn. Ct. App. Aug. 9, 2024):

> Ability and willingness are distinct concepts. "If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has failed to manifest <u>either</u> ability or willingness, then the first prong of the statute is satisfied." *In re Neveah M.*, 614 S.W.3d at 677. "Ability focuses on the parent's lifestyle and circumstances." *In re Jonathan M.*, No. E2018-00484-COA-R3-PT, 2018 WL 5310750, at *5 (Tenn. Ct. App. Oct. 26, 2018); *see also In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018) ("Mother failed to manifest an ability to personally assume legal and physical custody of the children because she was living an itinerant lifestyle, residing with friends or in her car, at the time DCS filed the termination petition.").
>
> With respect to willingness, this Court has previously elucidated: "Parents demonstrate willingness by attempting to overcome the obstacles that prevent them from assuming custody or financial responsibility for the child." *In re Cynthia P.*, No. E2018-01937-COA-R3-PT, 2019 WL 1313237, at *8 (Tenn. Ct. App. Mar. 22, 2019). Furthermore, "we look for more than mere words," *id.*, and "we have previously held that evidence was sufficient to meet this ground when it showed that the parent voluntarily chose to live a lifestyle lacking stability." *In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at *9 (Tenn. Ct. App. Nov. 25, 2019) (citing *In re Morgan K.*, No. M2018-00040-COA-R3-PT, 2018 WL 5733291, at *13 (Tenn. Ct. App. Oct. 31, 2018)). Many of the same facts relevant to a parent's willingness apply to our analysis of a parent's ability inasmuch as both of these concepts may relate to a parent's "lifestyle." *Id.*; *In re Jonathan M.*, 2018 WL 5310750, at *5.

*Id.* at *4 (emphasis in original).

As noted above, this ground also requires clear and convincing proof that returning Justice to Father's custody would pose a risk of substantial harm to her welfare. *See In re Neveah M.*, 614 S.W.3d at 677. As we have previously observed:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Elizabeth Y.*, 2024 WL 3738701 at *6 (citing *In re Maya R.*, 2018 WL 1629930, at *8) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

The trial court found that "Father had not manifested an ability or a willingness to assume legal and physical custody of the child or financial responsibility of the child." It then turned its attention to the second essential element of this ground, whether Petitioners proved by clear and convincing evidence that returning Justice to Father's custody would pose a risk of substantial harm to Justice's welfare. Its findings regarding this element are limited to the following:

> 33. The Court finds that the inquiry now turns to whether placing the child in Respondent Father's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. The answer to this question is yes.

> 34. There is no proof that the Respondent Father has done anything to address his criminal issues that were pending during the Department of Children's Services case, and there may be a current warrant for his arrest. He chose not to participate in any of these proceedings despite notice.

Petitioners, not Father, bear the burden of proving by clear and convincing evidence that returning custody of Justice to Father would pose a risk of substantial harm to the physical or psychological welfare of Justice. There is very little evidence concerning Father's alleged criminal record. Moreover, the fact "there may be a current warrant" fails to fulfill Petitioners' burden of proof. Thus, Petitioners failed to establish this ground by clear and convincing evidence.

Accordingly, we reverse the trial court's finding that this ground was proven. Nevertheless, we have affirmed the trial court's finding that two other grounds for terminating Father's parental rights were proven.

Because we have determined that at least one statutory ground for terminating each parent's parental rights has been proven, we must now decide if Petitioners have proven, by clear and convincing evidence, that termination of Mother's parental rights and Father's parental rights is in the best interest of Justice. *See* Tenn. Code Ann. § 36-1-113(c); *see also White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004).

## II. JUSTICE'S BEST INTEREST

Once a court has found that at least one ground for termination has been established, the interests of parent and child diverge. *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

In determining whether termination of parental rights is in a child's best interest, courts must consider the "relevant and child-centered factors applicable to the particular case." Tenn. Code Ann. § 36-1-113(i)(1). The statutory scheme also recognizes that not all statutory factors may be relevant, or applicable, in every case. *See* Tenn. Code Ann. § 36-1-113(i)(3) ("All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order."). Moreover, these statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant, applicable, to the best interest analysis. *In re Neveah M.*, 614 S.W.3d at 679 (Tenn. 2020) (citations omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination is in the child's best interest. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

After reviewing all the factors, the trial court made specific findings regarding each of the relevant statutory best interest factors and concluded that two factors were not applicable but that all other factors favored termination of Mother's and Father's parental rights. We discuss each in turn.

Factor (A) concerns the effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's

minority. The trial court found that Justice's need for continued stability and continuity was paramount. In pertinent part the court found:

> The child has experienced stability and continuity with the Petitioners since July 2023. The child is enrolled and thriving in school in Hardeman County with the Petitioners, a school system in which the child can remain until her high school graduation. The Court finds that the child has a set routine with the Petitioners, and they have provided her for every need since the child has been in their physical custody. The Petitioners are the only family the child knows and refers to them as "Mom and Dad." The Court finds that it would be horrific for the child for this relationship and routine with the Petitioners to be disrupted. The Court further finds that Respondents have not shown any stability and continuity in terms of meeting the needs of the child.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and we have determined that the evidence does not preponderate against this finding.

As for factor (B), which considers the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition, the court found:

> The child was exposed to drugs by the Respondent Mother and is lucky to be alive. Neither Respondent has been stable for any continued length of time. The Respondent Mother did not participate in the underlying dependency and neglect case and has not had contact with the child for years. When the child was in Mother's custody, the child did not attend school like she should have. The Respondent Father has been in, and out of jail and chose not to participate in this matter despite notice. The child is thriving now with the current custodians and well taken care of. She is bonded with the Petitioners and their community. The child has expressed a desire to the Guardian ad Litem to "stay with Mom and Dad" meaning the Petitioners. To change the child's caregiver and her environment would cause harm to this child. The Court finds that the child is "home" with the Petitioners.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (C) concerns whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs. The trial court found that:

- 16 -

Respondents have not demonstrated any continuity and stability in meeting any of the child's needs. Neither Respondent has proven that either of them have anything to offer the child. Neither parent has met this child's most basic needs. Neither parent has supported this child educationally, and in fact, when the child was in Mother's custody, the child was not attending school regularly, and instead moving back and forth to Michigan and living in hotels. Instead, all of the child's basic material, educational, housing, and safety needs have been provided by the Petitioners.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (D) considers whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment. In this regard, the court found that Justice "does not know either Respondent as a parent," and they are strangers to Justice.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (E) concerns whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child. In this regard the court stated:

While the Court acknowledges that a no contact order has been in place regarding the child, nothing has been filed by either parent to modify the Court's order, and years have now passed. The Respondents could have tried harder with the previous legal custodian to have contact with the child, but neither parent did. There has been no regular visitation by either Respondent.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (F) concerns whether the child is fearful of living in the parent's home. The court found that Justice would be fearful of living anywhere but with Petitioners and she does not know Mother, nor the home in which she resides.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (G) concerns the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms was not applicable. Noting similar reasons as stated in factor F. above, the court found that Justice

would "be likely to suffer from post-traumatic stress disorder due to all of the instability the child experienced in the custody of the Respondent Mother."

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and we have determined that the evidence does not preponderate against this finding.

As for factor (H), whether the child has created a healthy parental attachment with another person or persons in the absence of the parent, the court found that Justice is extremely attached to Petitioners and their extended family, she does not know anyone else as "Mom" and "Dad" except Petitioners. The court also found that Justice is bonded to the Petitioners' church family and community as well.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (I) concerns whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage. In this regard, the trial court found that Justice is bonded with not only Petitioners, but with their children and extended family.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (J) concerns whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner. As for this factor, the trial court found that:

> Mother may have overcome her addiction demons for now. However, according to her own testimony, Mother is living with and, dating Mr. [P.], whom she admits smokes marijuana and drinks alcohol. Mother needs to continue her sober lifestyle and alcohol and drug treatment. The Court finds that being around drugs and alcohol are not beneficial to Mother's sobriety. The Court finds that Father did not participate in this matter so his lasting adjustment cannot be ascertained.

Based on these findings, the court found that this factor weighs heavily in favor of termination of both parents' parental rights. We, however, find that this finding of fact as well as the evidence it is based on are insufficient as it pertains to Father because, as the

court stated, Father's "adjustment cannot be ascertained." *See In re Colten B.*, No. E2024-00653-COA-R3-PT, 2025 WL 252663, at *9 (Tenn. Ct. App. Jan. 21, 2025) (finding a factor neutral, meaning it did not weigh in favor of or against termination due to a lack of evidence pertaining to that factor) (citing *See In re Evandor C.*, No. M2022-01697-COA-R3-PT, 2024 WL 678014, at *17 (Tenn. Ct. App. Feb. 20, 2024) (agreeing with the trial court that these factors weighed neutrally when it was "unknown whether he is fearful of living in the parent's home or whether he was traumatized"); *see also In re Riley B.*, No. E2022-00684-COA-R3-PT, 2023 WL 3477216, at *11 (Tenn. Ct. App. May 16, 2023) (agreeing with the trial court that factor (F) did not weigh in favor of or against termination where there was "no significant testimony" on that factor). Moreover, the trial court's "finding of fact" on this issue, "that Father did not participate in this matter so his lasting adjustment cannot be ascertained" is insufficient to sustain a holding that this factor favors terminating Father's parental right.

Accordingly, we find factor (J) neutral as to Father due to a lack of evidence as well as an insufficient finding of fact but agree with the trial court's finding that this factor favors termination of Mother's parental rights.

Factor (K) considers whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions. In this regard the court found that:

> Respondents did not participate in the underlying dependency and neglect case in which the Department of Children's Services could have assisted the parents with multiple services to address their needs. Services through the Department of Children's Services would have been set up for the Respondents to complete if they would have participated with the DCS worker. While the Court finds that the Mother has taken advantage of some programs on her own, she needs mental health services and continued alcohol and drug treatment. The Court would define Mother as taking "minimal" advantage of available programs to assist in making a lasting adjustment, there is a lot more to offer that parents could have taken advantage of.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

The court found that factor (L) was not applicable. We agree.[13]

---

[13] We have deemed a factor inapplicable in many cases where no evidence was presented that was relevant to the factor. *See In re Colten B.*, No. E2024-00653-COA-R3-PT, 2025 WL 252663, at *10 (Tenn. Ct. App. Jan. 21, 2025) (citing *e.g.*, *In re Lilah G.*, No. E2023-01425-COA-R3-PT, 2024 WL 3825077, at *10 (Tenn. Ct. App. Aug. 15, 2024) (agreeing with the trial court that factor (F) did not apply because there was no proof regarding it presented at trial).

Factor (M) concerns whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest. In this regard, the trial court reasoned that:

> [T]he parents have not had an urgency about anything in this case. Respondent Father has still made no attempts to avail himself of this Court despite notice. Respondent Mother only ever filed something in response to this Termination Petition being filed, nothing prior thereto. Too many years have passed for this child already.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Factor (N) addresses whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult. In this regard, the trial court found that Mother has assault charges in her past, and that her boyfriend, Mr. P., with whom she resides, also has domestic assault charges. The court also found that Father was incarcerated at the time of the underlying dependency and neglect case.

Based on these findings the court found that this factor weighs in favor of terminating both parents' rights. We agree as to Mother but find the evidence insufficient as to Father because the nature of the charges for which Father was incarcerated at the time of the dependency and neglect case are not identified as pertaining to "brutality or physical, sexual, emotional, or psychological abuse or neglect." Thus, we find that Petitioners failed to prove that this factor favored terminating Father's parental rights but agree with the court's finding as to Mother.

Factor (O) concerns whether the parent has ever provided safe and stable care for the child or any other child. The trial court found that:

> Mother did not provide safe and stable care for this child. The child was exposed to drugs in her custody and did not experience housing stability. The Respondent Mother does have one child in her custody, but she does not have legal custody of several others. Respondent Father has never provided safe and stable care for this child.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

As for factor (P), which addresses whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive, the court found that Mother and Father:

[H]ave no idea what the basic and specific needs are for this child. There has been no understanding by the parents of the child's needs. No clothing, food, or other offers of help were made to the Petitioners or prior custodians by the Respondents.

The court found that this factor weighs heavily in favor of termination of both parents' parental rights, and the evidence does not preponderate against this finding.

Regarding factor (Q), which pertains to whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive, the court found that "Father did not avail himself of this Court. The Respondent Mother does have a home in which she resides with Mr. P., but the problem is, it is not Mother's home. Mr. P. could simply kick her out at any time."

The court found that this factor weighs in favor of termination of both parents' parental rights. Although the facts in the record preponderate in favor of the findings of fact concerning Mother, we respectfully disagree with the conclusion that the singular finding of fact that "Father did not avail himself of this Court" favors terminating Father's parental rights.

Factor (R) addresses whether the physical environment of the parent's home is healthy and safe for the child. The court made these findings:

The Court finds that the Court has no idea if the Respondent Father even has a home. There does not appear to be anything physically wrong with the place in which Mother is living, except for the admitted alcohol and drug use in the home.

Based on these findings the court found that this factor weighs in favor of terminating both parents' rights. We respectfully disagree, noting again that Petitioners have the burden of proving that a best interest factor favors termination of a parent's rights. Thus, we conclude that these facts do not prove that point. Accordingly, this factor does not favor termination of either parent's rights.

As for factor (S), which concerns whether the parent has consistently provided more than token financial support for the child, the court found that the parents "have provided nothing for the child. No monetary support, no clothes, no gifts have been provided for the child." Based on these findings the court found that this factor weighs in favor of

terminating both parents' rights. We agree that this factor favors termination of both parents' parental rights.

Factor (T) considers whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child. The trial court found that:

> Mother did not take advantage of the services which could have been offered with the Department of Children's Services. Mother has made some progress to address her addiction issues, but there is more work to be done. The child deserves continued stability with the Petitioners. Neither parent has completed the required mental health assessment. It would not be safe and stable for this child to be placed with the parents until the Court could find out more information about the Respondents' mental and emotional fitness.

The record preponderates in favor of the court's finding that "Mother has made some progress to address her addiction issues, but there is more work to be done." It also supports the finding that "it would not be safe and stable for this child to be placed with the parents." Accordingly, we agree with the trial court's finding that this factor favors termination of both parents' parental rights.

Having conducted a de novo review of the trial court's findings of fact, we have determined the evidence preponderates in favor of the trial court's findings of fact except as noted otherwise above. Based on these findings, we conclude that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Mother's parental rights and Father's parental rights is in best interest of Justice. *See In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56. Accordingly, we affirm the trial court's determination that termination of both parents' parental rights is in the best interest of Justice.

Because we have affirmed the trial court's determination that grounds for termination have been proven and that termination of both parents' parental rights is in the best interest of Justice, we affirm the termination of Mother's and Father's parental rights to Justice.

## IN CONCLUSION

Accordingly, we affirm the judgment of the trial court. Costs of appeal are assessed against Taniya W. (Mother), and Ka'Darius P. (Father), jointly and severally.

_____
FRANK G. CLEMENT JR., P.J., M.S.